UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

EQUINE LUXURY PROPERTIES, LLC, et al.,

       Plaintiffs,

v.

COMMERCIAL CAPITAL BIDCO, INC., et al.,

       Defendants.

Case No. 1:23-cv-01142
Hon. Hala Y. Jarbou
Magistrate Judge Sally J Berens

---

**EXPEDITED CONSIDERATION REQUESTED**

---

**PLAINTIFFS' MOTION TO
ESCROW FUNDS AND DISCHARGE MORTGAGE**

Plaintiffs, Equine Luxury Properties, LLC and 138 River Street, LLC, move this Court, pursuant to F.R.Civ.P. 67 and MCL § 438.31c(10), for an order escrowing the proceeds from the sale of a mortgaged property and discharging Defendant Commercial Capital BIDCO, Inc.'s mortgage on that property in accordance with the provisions set forth in a Temporary Restraining Order previously entered by the Circuit Court for Grand Traverse County, in Traverse City, Michigan, before this matter was removed to this Federal Court. This motion is supported by the accompanying Brief in Support of Plaintiffs' Motion to Escrow Funds and Discharge Mortgage.

Plaintiffs request expedited consideration of this Motion pursuant to LCivR 7.1(e). On January 9, 2024, the purchaser of the property contacted Plaintiffs' representatives and indicated that if the issue over the discharge of Defendants' mortgage lien as a condition of closing on the sale of the property is not resolved by January 31, 2024, the purchaser will cancel the transaction.

As set forth in the Certificate of Attempts to Obtain Concurrence, Plaintiffs' counsel has made multiple attempts to confer in a goof faith effort to resolve the issue. Plaintiffs have proposed,

1

as provided in the TRO, that Defendant discharge its mortgage on the property and the proceeds of the sale, net of closing costs and commissions, be placed in escrow with the Clerk of the Court, in an interest-bearing account, pending resolution of this matter or further Court order.

The sales price of the property is $2,000,000, whereas the Defendant's appraiser, Colliers International, determined that that value of the property at the time Defendant made the initial loan at issue to Plaintiffs was $1,400,000.  The sale is expected to "net" $1,870,000, or more than $450,000 than at what the Defendant's own appraiser had valued the property.

By discharging Defendant's mortgage and escrowing the net sale proceeds, the current sale would avoid the lengthy and costly mortgage foreclosure sale process Defendants had initiated to sell and liquidate the property anyway and, if the Defendant prevails on the merits, it would be entitled to all or part of the proceeds depending on the amount this Court determined was due the Defendant, if anything. Moreover, this is the procedure provided in the TRO still in effect.

Thus, Defendant has unreasonably withheld concurrence and is acting in bad faith, for which the Defendant should be sanctioned, pursuant to LCivR 7.1(d)(iii).

Respectfully submitted,

/s/ Paul L. Nine
Paul L. Nine (P18307)
Paul L. Nine & Associates, P.C.
7 Square Lake Road, Suite 131
Bloomfield Hills, MI 48302
Tel: (248) 644-5500
E-mail: Office@PaulLNinePC.com
Counsel for Plaintiffs

Date: January 9, 2024

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

EQUINE LUXURY PROPERTIES, LLC, et al.,

      Plaintiffs,

v.

COMMERCIAL CAPITAL BIDCO, INC., et al.,

      Defendants.

Case No. 1:23-cv-01142
Hon. Hala Y. Jarbou
Magistrate Judge Sally J Berens

_____/

## CERTIFICATE OF ATTEMPTS TO OBTAIN CONCURRENCE PURSUANT TO LCivR 7.1(d)

The undersigned certifies that he has conferred with opposing counsel on multiple occasions in a good-faith effort to resolve the dispute set forth in Plaintiffs' Motion to Escrow Funds and Discharge Mortgage.

On November 2, 2023, the undersigned initially contacted opposing counsel via e-mail requesting concurrence in the relief sought by the motion. My office sent follow up e-mails to defense counsel on November 3, 2023. Defense counsel ignored my requests via email.

On November 6, 2023, while I was hospitalized but at my direction, my legal assistant contacted defense counsel by telephone to seek concurrence. Opposing counsel withheld concurrence for the stated reason that Defendant had filed a title insurance claim against Westcor Title, the underwriter of the lender's title insurance policy issued to Defendant at closing on the loan to Plaintiffs, because the title agency had recorded its mortgage on the subject property in the wrong county and a junior lien holder now had a superior lien position over what should have been a 1st mortgage lien position in Defendant's favor.

On December 14, 2023, I sent an e-mail to defense counsel, stating that Westcor Title had resolved the Defendant's title insurance claim by purchasing the junior lien holder's mortgage and subordinating it to Defendant's lien. Now that Defendant held a 1st mortgage lien position, I again requested Defendant's concurrence in the relief sought by Plaintiffs' motion to escrow funds and discharge mortgage.

I followed up with defense counsel several times by telephone to seek concurrence.

On December 26, 2023, I again sent an email to defense counsel, requesting concurrence. On December 27, 2023, defense counsel responded, stating that his client would not concur in the relief sought without explanation; thus necessitating the filing of the Plaintiffs' motion.

Respectfully submitted,

/s/ Paul L. Nine
Paul L. Nine (P18307)
Paul L. Nine & Associates, P.C.
7 Square Lake Road, Suite 131
Bloomfield Hills, MI 48302
Tel: (248) 644-5500
E-mail: Office@PaulLNinePC.com
Counsel for Plaintiffs

Date: January 9, 2024

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

EQUINE LUXURY PROPERTIES, LLC, et al.,

      Plaintiffs,

v.

COMMERCIAL CAPITAL BIDCO, INC., et al.,

      Defendants.

Case No. 1:23-cv-01142
Hon. Hala Y. Jarbou
Magistrate Judge Sally J Berens

---

**BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION TO ESCROW FUNDS AND DISCHARGE MORTGAGE**

---

## INTRODUCTION

This dispute revolves around a criminally usurious loan made by Commercial Capital

BIDCO, Inc. ("CCB") to Plaintiffs. Plaintiffs allege that CCB is barred from enforcing the loan or

recovering the indebtedness, including principal or interest, under the "wrongful-conduct rule"

because the loan documents provided for illegal interest rate exceeding 25% per annum in violation

of Michigan's criminal usury act.

Plaintiffs have entered into a purchase and sale agreement to sell one of the properties they

pledged as mortgage collateral to secure repayment of the indebtedness evidenced by the loan

documents. The sale price is $2,000,000 and is now expected to net roughly $1,880,000. In

accordance with the procedure set forth in the TRO issued and still in effect in this matter, Plaintiffs

proposed that CCB discharge its mortgage on the property and the net sale proceeds be held by the

Clerk of the Court, in an interest-bearing account, pending resolution of this dispute, as

contemplated by the TRO.

CCB has withheld its concurrence, even though (i) the net sale proceeds exceed CCB's appraised value of the property by more than $450,000; (ii) between the cash from the sale and other property pledged as mortgage security, the value of the collateral would exceed the amount CCB claims it is owed by more than $1,500,000; and (iii) prior to Plaintiffs initiating this action and obtaining a TRO, CCB had initiated foreclosure by advertisement to foreclose on its mortgages and force the sale and liquidation of the properties anyway. If CCB prevails on the merits, it can avoid a lengthy and costly mortgage foreclosure process and a redemption period - and have cash in immediately available funds – again, if it prevails.

The purchaser has now threatened to cancel the transaction if the issue over the discharge of CCB's mortgage against the property as a condition of closing is not resolved by January 31, 2024. Because of CCB's intransigence, Plaintiffs have no choice but to file this motion and incur unnecessary and easily avoidable legal fees and costs. Plaintiffs' motion should be granted and CCB should be sanctioned pursuant to LCivR 7.1(d)(iii).

## **BACKGROUND**

On July 28, 2022, CCB made a 1-year term loan to Plaintiffs, in the amount of $1,834,000, at an initial interest rate of 12% per annum. Plaintiffs pledged two-properties as collateral security for the performance of the loan, granting CCB mortgages on 138 River Street in Elk Rapids, Michigan ("138 River Street") and V/L 000 Brackett Road in Williamsburg, Michigan ("Brackett Road Property").

Prior to making the loan, CCB retained Colliers International to perform appraisals on the properties. Colliers International determined that the fair market value of the properties exceeded $3,100,000, concluding that the value of 138 River Street was more than $1,700,000 and the value of Brackett Road Property was more than $1,400,000. Thus, the loan was

2

overcollateralized – *i.e.*, the value of the collateral exceeded the amount of the loan – by almost $1,200,000 ($3,100,000 - $1,834,000).

As the 1-year term was set to mature, CCB offered to renew the loan for an additional 6-months "on new terms." The renewal loan documents, which superseded and replaced the original documents, raised the interest rate from 12% per annum to more than 28.65% per annum. When Plaintiffs protested, CCB declared a default and increased the rate even further to an eyepopping 34.65%.

On August 18, 2023, CCB initiated foreclosure by advertisement, seeking to foreclose on its mortgages and to force the sale and liquidation of the properties by public auction to satisfy the indebtedness.

On October 6, 2023, Plaintiffs filed a complaint for declaratory and injunctive relief under Michigan usury statutes in Grand Traverse County Circuit Court, in Traverse City, Michigan, alleging, among other things, that (i) CCB was barred from enforcing the loan or recovering any part of the indebtedness – principal or interest – under the "wrongful conduct rule" because CCB violated Michigan's criminal usury act by charging interest at a rate exceeding 25% per annum[1]; and (ii) CCB's mortgages on the properties were null and void because the indebtedness secured by the mortgages was unenforceable.

On October 12, 2023, the Circuit Court held a hearing on Plaintiffs' motion for a temporary restraining order. CCB and its legal counsel had prior notice of, and appeared at, the hearing. The Circuit Court granted Plaintiffs' motion for a TRO, finding, in part:

> No bond or surety is required because the mortgages granted to
> Commercial Credit BIDCO, Inc. against the plaintiffs' properties

---

[1] Michigan treats criminal usury as a felony. A lender is guilty of criminal usury when it knowingly charges or collects interest at a rate exceeding 25% per annum, punishable by up to 5-year imprisonment and a $10,000 fine. MCL § 438.41.

> described above will remain in place while this Order is in effect or, if either or both of the above-described properties is sold by the plaintiffs, the sale proceeds, net of prior or priority liens, commissions, and closing costs, will be deposited with the clerk of the court, in an interest-bearing account, subject to discharge of CCB's mortgage, pending the outcome of this dispute or further order of this Court.

(TRO, dated 10/13/2023, at p. 3, ¶ 7.)

Plaintiffs entered into a purchase and sale agreement to sell the Brackett Road Property for $2,000,000, subject to Plaintiffs delivering "clear and marketable title," as well as a title insurance policy, to the purchaser. **[Exhibit 1.]** The transaction was originally scheduled to close on November 8, 2023.

On November 2, 2023, Plaintiffs' counsel sent an e-mail to CCB's attorney, requesting that CCB's discharge its mortgage on the Brackett Road Property and proposing that the net sale proceeds be held in escrow, in an interest-bearing account, pending resolution of this dispute or further court order. On November 3, 2023, Plaintiffs' counsel sent a follow up e-mail to defense counsel after not receiving a reply to his prior email the day before.

On November 6, 2023, Plaintiffs' counsel asked his legal assistant to contact defense counsel by telephone while he was in the hospital. Defense counsel withheld concurrence until CCB's title insurance claim against Westcor Title Insurance was resolved.[2]

---

[2] At the time CCB made the loan to Plaintiffs on July 28, 2022, Plaintiffs obtained a lender's title insurance policy underwritten by Westcor Title Insurance to insure CCB's mortgage on the against title claims involving the properties pledged as collateral. The title closing agent, however, recorded CCB's mortgage on the Brackett Road Property in the wrong county. When the Plaintiffs took out a second loan against the Brackett Road Property, the lender for the second loan became the 1st lien holder because CCB's mortgage had not been recorder in the property county. Hence, CCB filed a claim against Westcor Title Insurance under its lender's title policy regarding the recording error.

On December 14, 2023, Plaintiffs' counsel sent an e-mail to defense counsel, advising that Westcor Title Insurance had resolved CCB's title insurance claim by purchasing the 2nd lender's lien position and subordinating the lien to CCB's mortgage, which by that time, had been recorded in the property county by Trott Law. **[Exhibits 2, 3, 4.]** Now that the 2nd lender's lien position was subordinated to CCB's mortgage, Plaintiffs' legal counsel estimated that the sale of the Brackett Road Property would net more than $1,880,000.[3] **[Exhibit 5.]** As such, Plaintiffs' counsel again requested that CCB agree to discharge its mortgage in return for the net sale proceeds being placed in escrow pending resolution of this dispute.

On December 15, 2023, defense counsel indicated that "I will review with my client and get back to you." **[Exhibit 6.]**  On December 27, 2023, two-weeks later, defense counsel finally responded via e-mail that CCB was not "agreeable" to placing the sale proceeds in escrow without explanation. [Exhibit 7.]

Plaintiffs had several conversations with Westcor Title Insurance about insuring over CCB's mortgage and placing the net sale proceeds in escrow in light of CCB's refusal to discharge its mortgage.  On January 9, 2024, Plaintiffs' representatives were informed that the purchaser would cancel the transaction if the issue over the discharge of CCB's mortgage lien against the Brackett Road Property is not resolved by January 31, 2024.

## ARGUMENT

### I.    THE COURT SHOULD ENTER AN ORDER DISCHARING CCB'S MORTGAGE AND ESCROWING THE SALE PROCEEDS

---

[3] The ALTA Seller's Settlement Statement for the proposed closing on November 8, 2023, reflected the net "due the seller" as $1,324,947.68. If the amount reflected as the payoff to the 2nd lender ($556,867.38) under the section entitled "Payoff" on page 1 of the Settlement Statement is added to the amount "due the seller," because the 2nd lender's position has been subordinated to CCB's mortgage lien, then the net "due the seller," and available to be placed in escrow, would be $1,324,947.68 + $556,867.38 = $1,881,815.06 (before closing adjustments for taxes and other items).

## A. F.R.CivP. 67 Permits Disputed Funds to Deposited with the Court

Fed.R.Civ.P. provides:

> (a) DEPOSITING PROPERTY. If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party—on notice to every other party and by leave of court—may deposit with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting deposit.
> (b) INVESTING AND WITHDRAWING FUNDS. Money paid into court under this rule must be deposited and withdrawn in accordance with 28 U.S.C. §§2041 and 2042 and any like statute. The money must be deposited in an interest-bearing account or invested in a court-approved, interest-bearing instrument.

"The core purpose of Rule 67 is to relieve a party who holds a contested fund from responsibility for disbursement of that fund among those claiming some entitled thereto." *Aslton Caribe v. Geo. P. Reintjes Co., Inc.*, 484 F.3d 106, 113 (1st Cir. 2007),(citing 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2991 (2d Ed.). A district court should not grant a Rule 67 motion unless the question of entitlement is genuinely in dispute. See, *e.g., Gulf States Utils Co. v. Ala. Power Co.*, 824 F.2d 1465, 1475 (5th Cir. 1987).

> Rule 67 has been described as "a procedural device" ... intended to provide a place for safekeeping for disputed funds pending resolution of a legal dispute and not to provide a means of altering the contractual relationship and legal duties of each party."

*Ray Legal Consulting Group v. DiJospeh III. et al.*, 37 F. Supp.3d 704, 729 (S.D.N.Y. 1992).

The Notes of the Advisory Committee on Rules provides an example on when deposit of disputed funds is appropriate:

> NOTES OF ADVISORY COMMITTEE ON RULES—1983 AMENDMENT
> Rule 67 has been amended in three ways. The first change is the addition of the clause in the first sentence. Some courts have construed the present rule to permit deposit only when the party making it claims no interest in the fund or thing deposited. *E.g., Blasin-Stern v. Beech-Nut Life Savers Corp.*, 429 F.Supp. 533 (D.

6

> Puerto Rico 1975); *Dinkins v. General Aniline & Film Corp.*, 214 F.Supp. 281 (S.D.N.Y. 1963). However, there are situations in which a litigant may wish to be relieved of responsibility for a sum or thing, but continue to claim an interest in all or part of it. In these cases the deposit-in-court procedure should be available; in addition to the advantages to the party making the deposit, the procedure gives other litigants assurance that any judgment will be collectable. The amendment is intended to accomplish that.

There is a *bona fide* dispute between the parties over whether CCB's loan documents are enforceable and whether it is entitled to recover any part of the indebtedness – principal, interest, or other fees – because the loan documents are criminally usurious. Hence, depositing the net sale proceeds is appropriate and necessary under F.R.Civ.P. 67.

This procedure in F.R.Civ. P. 67 is also consistent with the provisions of TRO, which states, in part:

> No bond or surety is required because the mortgages granted to Commercial Credit BIDCO, Inc. against the plaintiffs' properties described above will remain in place while this Order is in effect or, if either or both of the above-described properties is sold by the plaintiffs, the sale proceeds, net of prior or priority liens, commissions, and closing costs, will be deposited with the clerk of the court, in an interest-bearing account, subject to discharge of CCB's mortgage, pending the outcome of this dispute or further order of this Court.

(TRO, dated 10/13/2023, at p. 3, ¶ 7.)

## B.  CCB's Loan and the Indebtedness Evidenced Thereby Are Unenforceable

Plaintiffs allege that CCB's charged and attempted to collect illegal interest. It is illegal for a lender to knowingly charge, take, or receive interest at a rate "exceeding 25% per annum or the equivalent rate for a longer or shorter period" under section 1 of Michigan's criminal usury act, Act 259 of 1968.  MCL §438.41. A lender who violates the criminal usury act is guilty of a felony, punishable by imprisonment for a term of up to 5-years and/or a fine not to exceed $10,000.  *Id.*

Under Michigan's wrongful-conduct rule, a plaintiff's claim will be barred if it is based,

7

in whole or in part, on the plaintiff's own illegal conduct. *Orzel v. Scott Drug Co*, 449 Mich. 550, 558 (1995).  This rule has been applied to bar lenders from enforcing loan agreements which provide for an illegal rate of interest. See, *e.g.*, *Wellman v. Bank One, N.A.*, 2005 WL 2291741 at *3 (Mich. Ct. Apps. - Sept. 20, 2005); *Scalici v. Bank One, N.A.*, 2005 WL 2291732 at *6 (Mich. Ct. Apps. - Sept. 20, 2005); *In re Miller*, No. DT 08-01545 at *5 (W.D. Bkr. Feb. 11, 2010),("Under Michigan law, the fact that a lender may recover principal after violating the *civil* usury statute does not mean that the lender may recover principal after violating the *criminal* usury statute. Based upon the unpublished opinion in <u>Scalici v. Bank One, NA</u>, and the Michigan Supreme Court opinion in <u>Orzel</u>, the court predicts the wrongful conduct rule would deprive the Plaintiff of any right to payment of the principal from the Defendant."),(emphasis in original). An illegal loan is rendered unenforceable, and the lender is precluded from recovering principal, interest, or other fees under the usurious loan agreements – and bars a lender from enforcing or foreclosing on a mortgage securing a usurious note as a matter of law.  See, *e.g., McKenna v. Wilson, 280 Mich. 227, 223;*, 273 NW 457 (1937),(when underlying debt is deemed usurious and unenforceable, the mortgage is subject to discharge); *Prime Fin. Servs. LLC v. Vinton*, 279 Mich. 245, 269 (2008),("[a] mortgage without an underlying obligation is a nullity"), citing *Ginsberg v. Capitol Wrecking Co.*, 300 Mich. 712, 717 (1942); see also *Cummings v. Cont'l Tool Corp.*, 371 Mich. 177, 183 (1963),(noting that a mortgage without an underlying enforceable obligation fails as a matter of law).

## C.  CCB Is Acting in Bad Faith

There is no reasonable justification for CCB to withhold its concurrence in the relief sought by this motion. CCB had the initiated foreclosure by advertisement process to foreclose on its mortgages and force the sale and liquidation of the mortgaged properties anyway. The sale of the

Brackett Road Property achieves the same purpose but avoids the time and costs of the foreclosure process and the period of redemption.

In addition, the net proceeds from the sale of the Brackett Road Property exceeds the value that CCB's own appraisers had estimated the property was worth by almost $500,000 ($1,880,000 v. $1,400,000) - and is greater than the principal amount of the loan ($1,834,000). There is no reason to block the sale or prevent the net sale proceeds from being placed in escrow.

CCB is oversecured. Between cash from the sale of the Brackett Road Property and the value that CCB's appraiser assigned to 138 River Street, CCB would have security totaling more than $3,500,000 to secure a debt which it claims is roughly $2,100,000. The sale of the property and the escrowing of the sale proceeds does not impair or hinder CCB's collateral position. If anything, by liquidating the Brackett Road Property for more money than CCB's appraiser believed the property was worth, CCB would be in superior position than what it previously and currently enjoys and would be far more desirable than proceeding with foreclosure and public sale if it prevails on the merits.

Given CCB's recalcitrance, Plaintiffs request that this Court impose sanctions pursuant to LCivR 7.1(d)(iii).

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court grant their motion to escrow proceeds and discharge mortgage and impose sanctions against Commercial Capital BIDCO, Inc.

Respectfully submitted,

/s/ Paul L. Nine
Paul L. Nine (P18307)
Paul L. Nine & Associates, P.C.
7 Square Lake Road, Suite 131
Bloomfield Hills, MI 48302
Tel: (248) 644-5500

E-mail: Office@PaulLNinePC.com
Counsel for Plaintiffs

Date: January 9, 2024

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 11, 2024, the foregoing Motion to Escrow Funds

and Discharge Mortgage and the Brief in Support thereof were electronically filed with the Clerk

of the Court using the ECF filing system.

/s/ Paul L. Nine

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

EQUINE LUXURY PROPERTIES, LLC, et al.,
Plaintiffs,

v.

COMMERCIAL CAPITAL BIDCO, INC., et al.,
Defendants.

Case No. 1:23-cv-01142
Hon. Hala Y. Jarbou
Magistrate Judge Sally J Berens

**BRIEF IN SUPPORT OF**
**PLAINTIFFS' MOTION TO ESCROW FUNDS AND DISCHARGE MORTGAGE**

# EXHIBIT 1

# ʌspire North.
### REALTORS®

## BUY SELL AGREEMENT

**OFFER DATE:** 09/19/2023                                        at 4            ☐ AM  ☑ PM

**Selling Broker:** EXIT NORTHERN SHORES REALTY          **Listing Broker:** Great Lakes Sotheby's International

**Selling Agent:** Audra Jackson                          **Listing Agent:** Don Stewart

**Email:**   audra@greatlakesequestrianfestival.com     **Email:**   don@greatlakessir.com

**Phone:**   231 835 1650                                 **Phone:**   352 804 0805

**1. AGENCY CONFIRMATION:** Buyer and Seller each acknowledge receipt of an Agency Disclosure Form.  The Selling Agent is acting as ☑ Buyer's Agent ☐ Agent/Subagent of the Seller ☐ Dual Agent ☐ Other

**2. BUYER:** The undersigned Buyer(s) Flintfields Horse Park LLC

_____ (Buyer's Legal Name(s)) agrees to purchase the following described Property

**3. REAL PROPERTY:** Full Property Address: V/L 000 Brackett Road, Williamsburg MI 49690 (Parcels A-F)
Described as located in the ☐ City ☐ Village ☑ Township of Acme
County of Grand Traverse                  State of Michigan. MLS # 1913938,3944,3945,3947,3950,3955
Tax No.(s):
2801-236-001-01, 2801-236-001-02, 2801-236-001-03, 2801-236-001-04, 2801-236-001-05, 2801--236-001-06
Legal Description:
N/E 1/4 of N/E 1/4 and East 28 Acres of the SE 1/4 of the NE 1/4, Section Town 38 North, Range 10 West - Parcels A, B, C, D, E, and F.




Owned by: Equine Luxury Properties LLC
Hereafter referred to as the Property.

**4. PRICE:**  The Purchase Price shall be $ 2,000,000            two million

**5. TERMS:**  The sale of the Property shall be consummated by delivery of a Warranty Deed or owner financing conveying marketable title upon compliance with subparagraph B            below:
☐ A. CASH SALE:  Payment of full Purchase Price.
☑ B. NEW MORTGAGE:  Payment of the full Purchase Price, contingent upon Buyer's ability to obtain, at Buyer's own expense a conventional                    mortgage loan in the amount of 1,600,000
Buyer agrees to make formal application for this mortgage within five (5) calendar days of the Effective Date of this Agreement and provide written notice to Listing Agent upon request.
☐ C. OWNER FINANCING:  See Owner Financing Addendum

**6. EARNEST MONEY:** Evidencing Buyer's good faith, Buyer deposits $ 35,000              ("Earnest Money")

Page 1 of 6                          Buyer's Initials [MM]          Seller's Initials [DS]

© Copyright Traverse Area Association of REALTORS® dba Aspire North REALTORS          Revision Date: 08/01/2023

☑ which has been collected ☐ to be collected within _____ days of the Effective Date and to be held by ☐ Selling Broker or ☑ Riverside Title Company _____ ("Escrowee"). Earnest Money shall be applied to the Purchase Price at closing. In the event the Buyer and Seller both claim the Earnest Money, the Earnest Money shall remain in Escrowee's trust account until a court action has determined to whom the Earnest Money must be paid, or until the Buyer and Seller have agreed in writing to the disposition of the Earnest Money. This Paragraph may be subject to the dispute resolution provisions in Paragraph 26 below.

EARNEST MONEY ACKNOWLEDGED BY: *Audra Jackson*  [dotloop verified 09/21/23 2:39 PM CDT PGMD-B6XH-8EA-NQE1]    Agent / REALTOR®

**7. FIXTURES & IMPROVEMENTS:** Sale to include all buildings and structures, improvements, carpeting, attached blinds and curtain rods, screens, storm sash and doors, shrubbery, built-in kitchen appliances, TV antenna, bathroom mirrors, plumbing and lighting fixtures, water softener (unless rented), fences, garage door openers (with transmitters), heating and air conditioning equipment, if any, now on the Property.

Included:

☐ Refrigerator　　　☐ Oven/Range　　　☐ Dishwasher　　　☐ Microwave
☐ Washer　　　☐ Dryer　　　☐ Television Mounts

Other: _____

Excluded: _____

**8. OIL, GAS, and MINERAL RIGHTS:** If any, are ☑ Included ☐ Not Included, unless previously severed.

**9. POSSESSION:** Seller shall deliver, and Buyer shall accept, possession of the Property, subject to the rights of any tenants, ☑ at closing or ☐ no later than 12:00 noon _____ days after the closing. For the purpose of possession, closing shall be defined as the settlement date on the closing statement.

From the date of closing through vacating the Property, Seller shall pay the sum of $ n/a _____ per day as an occupancy charge, and Seller shall be liable for Seller's pro rata share of utilities. The Seller's Title Company/Escrow Agent shall retain from the amount due Seller at closing the sum of $ n/a _____ as a deposit against these charges, paying to the Buyer the amount due and returning to the Seller the balance as determined by the date the Property is vacated and keys surrendered to Buyer. If possession is given prior to noon, the Seller/tenant will not be charged for that day of occupancy.

Possession to be given with the Property being in like condition as it was on the Effective Date. Seller shall have removed all personal property (unless otherwise stated in this Agreement or an additional written agreement). Property will be free and clear of trash and debris and left in broom-clean condition. Post-closing occupancy does not create a landlord-tenant relationship. This Paragraph shall survive a closing.

**10. SELLER'S DISCLOSURE:**

☐ Buyer acknowledges that a Seller's Disclosure Statement has been provided to Buyer.

☐ Seller shall provide Buyer with a Seller's Disclosure Statement with Seller's acceptance of this offer. Pursuant to the Seller Disclosure Act, MCL 559.951, et seq., Buyer will have 72 hours after hand-delivery of the disclosure statement (or 120 hours after delivery by registered mail) to terminate this Agreement by delivery of a written notice to Seller or Seller's agent.

☑ Seller is exempt from disclosure statement.

Buyer's Initials 　　　Seller's Initials 

© Copyright Traverse Area Association of REALTORS® dba Aspire North REALTORS
Revision Date: 08/01/2023

**11. LEAD-BASED PAINT DISCLOSURE:** If subject home was built prior to 1978, Buyer acknowledges that prior to signing this Buy and Sell Agreement, Buyer has received and reviewed a copy of the Lead-Based Paint Disclosure Form.

**12. ATTACHMENTS:** These attachments are incorporated by reference: ☐ Addendum(s) ☐ Seller's Disclosure Statement ☐ Lead-Based Paint Disclosure Form ☐ Other _____

**13. PROPERTY INSPECTIONS:** Buyer accepts the Property in an AS IS present condition and agrees that there are no additional written or oral understandings except as otherwise provided herein.

☑ This offer is contingent upon the Property being acceptable to the Buyer within the Inspection Period. The Inspection Period is from the Effective Date until 5:00 p.m. 30_____ days from the Effective Date. Seller shall make the Property available during reasonable hours for all of the Buyer's inspections. Any and all inspections shall be at Buyer's expense and Buyer will return the Property to its prior condition after any inspections or tests.

During this Period the Buyer has the following options:
1) If Buyer is not satisfied and wishes to **terminate** this Agreement, Buyer may provide written notice to Seller within this Inspection Period. Upon Buyer's written notification to terminate all Earnest Money shall be refunded to Buyer and parties agree to execute a mutual release of Earnest Money.
2) If Buyer is not satisfied and wishes to **modify** this Agreement based on those findings they shall have the option to submit a written request by way of addendum to the Seller within the Inspection Period (Note: A request by the Buyer to modify this Agreement DOES NOT give the Seller the right to terminate within this Period). If the modification is not agreed to in writing or the Seller fails to respond, the Buyer must remove this contingency during the inspection period, or this contract shall terminate. Upon termination, all Earnest Money shall be refunded to Buyer and parties agree to execute a mutual release of Earnest Money.
3) If the Buyer neither removes the inspection contingency nor terminates this Agreement in the Inspection Period, the Buyer shall be deemed to have **waived** this inspection contingency.

☐ Buyer acknowledges that Selling Broker/REALTOR® has recommended that Buyer obtain an inspection of the Property by an inspector and/or a licensed contractor.  Buyer does not desire to obtain an inspection of the Property.

**14. REGULATORY INSPECTIONS:** If any zoning ordinance or governing authority requires an inspection at the time of closing (including but not limited to the well and/or septic), if not already provided, Seller shall order said inspection within five (5) days of the Effective Date and provide Buyer evidence upon request.  Said inspection(s) shall be at Seller's expense unless otherwise agreed to in writing. Upon receipt, Seller shall provide said written results to Buyer within 48 hours and if said report discloses a condition unsatisfactory to Buyer, then the Buyer shall have 48 hours from receipt, to make a written proposal to Seller to correct any unsatisfactory conditions.  Should Seller fail to agree to said request within 48 hours, Buyer may elect to terminate this Agreement and all Earnest Money shall be refunded to Buyer(s) and parties agree to execute a mutual release of Earnest Money.  Buyer's failure to notify Seller of an unsatisfactory condition, within 48 hours of receipt shall be deemed an acceptance of any findings.

Where no inspection is required by ordinance or governing authority, then Buyer, at Buyer's expense, may arrange for any inspections during their inspection period per Paragraph 13, Property Inspections.

**15. ADDITIONAL CONDITIONS:**

Within five (5) days of the Effective Date of this Agreement, Seller will provide Buyer the following materials: (i) Phase 1 - ESA; (ii) most recent Certificate of Survey; (iii) Seller's land division application and approval by Acme Twp for the parcel splits; (iv) Seller's private road and storm water review plan; (v) storm water review memo and recommendation for approval of Seller's plan; (vi) private road construction permit issued to Seller. Buyer is solely responsible for determining whether its intended use for the Property is permitted under all applicable laws, rules, and regulations, including zoning and building code.

Buyer to provide conditional mortgage commitment to seller within (5) days of effective date

Buyer's Initials ____  Seller's Initials ____

© Copyright Traverse Area Association of REALTORS® dba Aspire North REALTORS                Revision Date: 08/01/2023

Closing to take place 5 days after inspection contingencies have been satisfied.

**16. CLOSING:** This sale is to be closed on or before see paragraph 15_____, unless otherwise agreed to in writing. The closing may be conducted by a title company or other escrow agent. The parties agree to equally divide the title company/escrow agent closing fee. In the event of a split closing, Buyer and Seller shall pay their own title company's closing fees. Seller to be responsible for county and state transfer tax.

**17. TITLE INSURANCE:** Seller shall provide to Buyer, at Seller's expense, an owner's policy of title insurance with standard exceptions in the amount of the Purchase Price. Seller will order the commitment for title insurance within 5 business days of the Effective Date. Seller shall provide the title commitment to Buyer and Buyer shall have 3 business days from time of receipt to review. If the Buyer objects to the exceptions in the title commitment then Buyer may make a written proposal to Seller to remedy the objection or terminate the Agreement and receive a refund of the Earnest Money. Buyer's failure to notify Seller of an unsatisfactory condition, within 3 business days shall be deemed an acceptance of any title as disclosed.

**18. PRORATIONS:** Rents, insurance, homeowner's association fees, condominium owner's association fees, road maintenance fees, fuel oil or propane at Seller's cost per gallon, sewer and water bills as well as other liens assumed by the Buyer shall be prorated as of the date of closing. "Current Taxes" (defined as general property taxes due in the calendar year the closing takes place) shall be prorated as of the date of closing in the following manner: county taxes, including township and school, shall be prorated on a calendar year basis, as if paid in arrears, so that Seller will be charged with the portion thereof from the prior January 1 to the date of closing, and Buyer with the balance of the year. City taxes and village taxes shall be prorated on a due date basis as if paid in advance so that Seller will be charged with the portion thereof from the prior July 1 to the date of closing, and Buyer with the portion from the date of closing to the next June 30.

**19. ASSESSMENTS:** Unless otherwise specified herein, Seller shall pay all installments of tax liens of local government that become due and payable on or before the day of closing. Buyer shall assume and pay all future installments of such assessment, unless otherwise agreed to in writing.

**20. PROPERTY DAMAGE:** If the building(s), fixtures and equipment on the Property are extensively damaged or are destroyed by fire or otherwise prior to closing, the Buyer may terminate this Agreement by written notice to Seller with a copy to Listing Broker and Selling Broker. Upon receipt of this notice, Selling Broker shall return the Earnest Money to Buyer, this Agreement shall be void, and the Parties shall have no further duty to one another. If Buyer does not send notice of termination, the closing shall occur and all proceeds of insurance of claims under insurance policies, if any, shall accrue to the benefit of Buyer.

**21. WALK-THROUGH:** Buyer reserves right to walk through the Property within 48 hours prior to closing to confirm all terms of this Agreement have been met.

**22. HOME PROTECTION PLAN:** Buyer and Seller have been informed that Home Protection Plans are available. Such plans may provide additional protection and benefit to a Buyer. The parties acknowledge that a REALTOR® may receive compensation from the companies offering these plans.
Buyer ☐ does ☑ does not wish to purchase a Home Protection Plan.

Buyer's Initials 

Seller's Initials 

© Copyright Traverse Area Association of REALTORS® dba Aspire North REALTORS

Revision Date: 08/01/2023

**23. HEIRS, SUCCESSORS AND ASSIGNS:** This Agreement binds Seller, Seller's personal representatives and heirs, and anyone succeeding to Seller's interest in the Property.  Buyer shall not assign this Agreement without Seller's prior written permission.

**24. COMPLIANCE:** The parties will be held to strict compliance with the time limitations contained in this Agreement.  If Buyer refuses to perform its obligations under this Agreement, the Earnest Money shall be forfeited and may be applied by the Seller to payment of his damages, and Seller may treat the forfeited Earnest Money as liquidated damages for such non-performance, breach or default.  If Seller's actual damages exceed the Earnest Money, Seller may pursue such other legal and equitable remedies as Seller may have against the Buyer.  If Seller defaults, the Earnest Money shall be returned to the Buyer and Buyer may pursue such legal or equitable remedies as Buyer may have against the Seller.

**25. RELEASE:** Buyer and Seller acknowledge that neither Listing Broker nor Selling Broker, nor their respective agents, have made any representations concerning the condition of the Property covered by this Agreement or the marketability of title, and Buyer and Seller release the Listing Broker and Selling Broker and their respective agents, with respect to all claims arising out of or related to this Agreement, any addendums or counteroffers; all claims arising from any purported representations as to the physical and environmental condition of the Property covered by this Agreement or the marketability of title; and all claims arising from any special assessments and/or utility bills which have been or may in the future be charged against the Property covered by this Agreement and, in addition, agree to indemnify and hold harmless the Listing Broker and Selling Broker and their respective agents from any and all claims related to those matters. This Paragraph shall survive a closing.

**26. DISPUTE RESOLUTION:** If any party has a dispute with another regarding the meaning, operation, or enforcement of any provision of this Agreement, the disputing parties agree to use non-binding mediation to negotiate a resolution before litigating or arbitrating the dispute.  They are required to utilize the services of the Conflict Resolution Services or another mutually acceptable neutral mediator to bring them together in at least one mediation session. This Paragraph shall survive the closing.

**27. LIMITATION:** Buyer and Seller agree that any and all claims or lawsuits which they may have against the Listing Broker and its agents and/or Selling Broker and its agents relating to their services must be filed no more than six (6) months after the date of closing of the transaction described in this Agreement.  Buyer and Seller waive any statute of limitations to the contrary.  This Paragraph shall survive a closing.

**28. ATTORNEY'S FEES:** In any action or proceeding arising out of this Agreement, the prevailing party, including any REALTOR® so involved, shall be entitled to reasonable attorney's fees and costs, to be paid by the non-prevailing party.  This Paragraph shall survive a closing.

**29. MULTIPLE LISTING SERVICE:** If Broker is a participant of a Board Multiple Listing Service ("MLS"); Broker is required to report the sale, its price and terms for the use of authorized Board Members, MLS participants and subscribers.

**30. ELECTRONIC COMMUNICATION:** As an alternative to physical delivery, the parties agree that this Agreement, any amendment or modification of this Agreement and/or any written notice or communication in connection with this Agreement may be delivered to the Seller in care of the Listing REALTOR® and the Buyer in care of the Selling REALTOR® via electronic mail or by facsimile via the contact information set forth above. Any such communication shall be deemed delivered and received at the time it is sent or transmitted. Seller represents and warrants that an electronic email address has been provided to listing REALTOR® from which Seller may receive electronic mail. Buyer represents and warrants that an electronic email address has been provided to Selling REALTOR® from which Buyer may receive electronic mail. The parties agree that the electronic signatures and initials shall be deemed to be valid and binding upon the parties as if the original signatures or initials were present in the documents in the handwriting of each party.

Buyer's Initials [MM] 09/21/23 3:57 PM EDT dotloop verified

Seller's Initials [DG] 09/14/23 12:22 PM EDT dotloop verified

© Copyright Traverse Area Association of REALTORS® dba Aspire North REALTORS   Revision Date: 08/01/2023

**31. COUNTERPARTS:** This Agreement may be signed in any number of counterparts with the same effect as if the signature of each counterpart were upon the same instrument.

**32. EFFECTIVE DATE AND TIMELINES:** The term "Effective Date" shall mean the date and time at which both Buyer and Seller have fully ratified this Agreement, agreeing upon its terms, and delivery has been made. All times, unless otherwise noted, are in Eastern Standard Time.

**33. COMPLETE AGREEMENT:** Buyer acknowledges receipt of a copy of this Agreement. Buyer and Seller agree that this is the entire Agreement between the parties and that there are no other written or oral understandings.  Buyer and Seller further agree that this Agreement supersedes any and all prior agreements, understandings, or representations made by the parties or their agents.

**THIS OFFER WILL EXPIRE ON** 09/21/2023 _____ at 5 _____ ☐ AM ☑ PM, or upon Seller's receipt of revocation from Buyer, whichever is earlier.

This is a legal document.  It is recommended to all parties that they have an attorney review the title commitment, this document and whether all terms have been met.

| | |
|---|---|
| *Matt Morrissey* <br> dotloop verified <br> 09/21/23 3:57 PM EDT <br> TJDZ-LQUD-RJUU-HPFB | Matt Morrissey |
| Buyer                Date and Time | Print Name |

| | |
|---|---|
| | |
| Buyer                Date and Time | Print Name |

**34. SELLER'S ACCEPTANCE:** Seller accepts Buyer's offer.  OR  ☑  See Seller's counteroffer

| | |
|---|---|
| *Dean Groulx* <br> dotloop verified <br> 09/22/23 12:22 PM EDT <br> UZ3V-C9SO-3ZEZ-HKJA | *MM* <br> 09/22/2023 <br> 6:14 PM EDT <br> dotloop verified Dean Groulx, Member |
| Seller                Date and Time | Print Name |

| | |
|---|---|
| | |
| Seller                Date and Time | Print Name |

**35. COUNTEROFFER:** This is a counteroffer to Buyer's offer. Seller accepts all the terms and conditions in the above Agreement with the following changes or amendments:

The 'THIS OFFER WILL EXPIRE' clause above, stating that the Buyer's offer will expire on 09/21/2023, at 5:00 P.M., is AMENDED and RESTATED as follows: THIS OFFER WILL EXPIRE ON  09/23/2023, at 5:00 P.M.  By signing Paragraph 36 below, Buyer is stipulating that Seller has made a timely acceptance of the Buyer's Offer.

Buyer's Initials  *MM* <br> 09/21/23 <br> 3:57 PM EDT <br> dotloop verified

Seller's Initials  *DG* <br> 09/22/23 <br> 12:22 PM EDT <br> dotloop verified

© Copyright Traverse Area Association of REALTORS® dba Aspire North REALTORS
Revision Date: 08/01/2023

The Seller reserves the right to continue to offer the Property for sale and may withdraw this offer in writing or accept another offer at any time prior to personal receipt by Seller or Seller's authorized agent of a copy of this counteroffer duly accepted and signed by Buyer.  Unless this counteroffer is accepted in this manner, on or before _____ at _____ ☐ AM ☐ PM, it shall be deemed revoked and the Earnest Money shall be returned to Buyer.  Seller acknowledges receipt of a copy of this counteroffer.  Dated this _____ day of _____ at _____ ☐ AM ☑ PM.

_____
Seller                              Date and Time

Dean Groulx
_____
Print Name

_____
Seller                              Date and Time

_____
Print Name

**36. ACCEPTANCE OF COUNTEROFFER:** If Seller's response constitutes a counteroffer; Buyer hereby accepts the terms of that counteroffer as set forth in Paragraph 36.

*Matt Morrissey*
dotloop verified
09/22/23 6:14 PM EDT
0BU5-DERE-C1WT-JUUL
_____
Buyer                              Date and Time

Matt Morrissey
_____
Print Name

_____
Buyer                              Date and Time

_____
Print Name

Buyer's Initials 

Seller's Initials 

© Copyright Traverse Area Association of REALTORS® dba Aspire North REALTORS

Revision Date: 08/01/2023

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

EQUINE LUXURY PROPERTIES, LLC, et al.,
Plaintiffs,

v.

COMMERCIAL CAPITAL BIDCO, INC., et al.,
Defendants.

Case No. 1:23-cv-01142
Hon. Hala Y. Jarbou
Magistrate Judge Sally J Berens

**BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION TO ESCROW FUNDS AND DISCHARGE MORTGAGE**

# EXHIBIT 2

**Paul Nine**

| | |
|---|---|
| **From:** | Paul Nine |
| **Sent:** | Thursday, December 14, 2023 9:52 AM |
| **To:** | Aaron Bayliss |
| **Subject:** | Equine Luxury Properties v. CCB |

Dear Aaron:

I am writing once again about your client's lien position on the Brackett Road property.

Westcor has now resolved the issue involving CCB's title insurance claim regarding the property. It purchased the 1st lien position and has subordinated it to CBB's mortgage lien. Thus, upon sale of the property, more than $1.87mm will be placed in escrow pending resolution of the dispute between ELP and CCB. This amount is greater than the "release price" of the Brackett Road mortgage previously provided by CCB. Please confirm whether your client will discharge its mortgage subject to the net sale proceeds being placed in escrow pending resolution of this dispute. If your client does not agree to do so, then we will file a motion seeking a court order for a judicial discharge of CCB's mortgage on the same conditions.

Please advise as soon as possible. Thank you.

Paul L. Nine, Esq.
Paul L. Nine & Associates, P.C.
7 West Square Lake Road, Suite 131
Bloomfield Hills, MI 48302
(248) 644-5500-office
(248) 644-5640-fax
Office@PaulLNinePC.com

CONFIDENTIALITY NOTICE

This e-mail and any documents accompanying it contain information from the law firm of Paul L. Nine & Associates, P.C., that is confidential and/or legally privileged. The information is intended only for the use of the intended recipient. If you are not the intended recipient, any disclosure, copying, distribution, forwarding, or the taking of any action in reliance on the contents of this e-mail or any attachments is prohibited. If you have received this e-mail in error, please notify the sender by replying to the message and then delete and destroy all copies of the e-mail and all the attachments.

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

EQUINE LUXURY PROPERTIES, LLC, et al.,
Plaintiffs,

Case No. 1:23-cv-01142
Hon. Hala Y. Jarbou
Magistrate Judge Sally J Berens

v.

COMMERCIAL CAPITAL BIDCO, INC., et al.,
Defendants.

**BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION TO ESCROW FUNDS AND DISCHARGE MORTGAGE**

# EXHIBIT 3

UNOFFICIAL COPY

ERECORDING
2023R-14900
STATE OF MICHIGAN
GRAND TRAVERSE COUNTY
RECORDED 12/11/2023 11:48:04 AM
PEGGY HAINES REGISTER OF DEEDS
PAGE 1 OF 1

## Assignment of Mortgage

State of Michigan
County of Grand Traverse

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MARK R. ABBRUZZESE (OWNER) OF MVG CAPITAL, LLC., (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and sel over 100% the described mortgage/deed of trust together with the certain note(s) described therein together with all interests secured thereby, all liens, and any rights due or to become due thereon to Westcor Land Title Insurance Company (ASSIGNEE)

Said mortgage made on December 16, 2022, by: DEAN GROULX (MEMBER) OF EQUINE LUXURY PROPERTIES, LLC. as borrower and MVG CAPITAL, LLC., as Lender, and recorded in office of the register of deeds of Grand Traverse County, Instrument 2022R-19612, DocID 8379765 on December 20, 2022. Upon the property situated in the Township of Acme, State of Michigan, Grand Traverse County, to wit:

THE NORTHEAST ¼ OF THE NORTHEAST ¼ AND THE EAST 28 ACRES OF THE SOUTHEAST ¼ OF THE NORTHEAST ¼, EXCEPT ROAD RIGHT-OF-WAY, OF SECTION 36, TOWN 28 NORTH, RANGE 10 WEST

Commonly known as: nbn Brackett Road

Parcel ID No. 28-01-236-001-00

Dated on this 16ᵗʰ day of November, 2023

*Signed and sealed in presence of*                                      *Signed and Sealed:*

_____                  _____ (L.S.)
*Witness*                                                              Mark R. Abbruzzese
                                                                     MVG Capital, LLC.

_____                  _____ (L.S.)
*Witness*

                                                     _____ (L.S.)

                                                     _____ (L.S.)

STATE OF Michigan
COUNTY OF Wayne ss.

The foregoing instrument was acknowledged before me on this 16ᵗʰ of November, 2023 by Mark R. Abbruzzese, of MVG Capital, LLC.

_____
(Sign)
(Print) Claudia Barbosa

Notary public, Wayne _____ County, _____

My commission expires: 05 / 12 / 2029

CLAUDIA BARBOSA
Notary Public - State of Michigan
County of Wayne
My Commission Expires 05/12/2029
Acting in the County of WAYNE

*This instrument drafted by:*
Renee Bruce
192 N Main
Plymouth, MI 48170.

*When recorded return to:*
Renee Bruce
192 N Main
Plymouth, MI 48170

Recording Fee:                                        Transfer Tax: $0.00

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

EQUINE LUXURY PROPERTIES, LLC, et al.,
Plaintiffs,

v.

COMMERCIAL CAPITAL BIDCO, INC., et al.,
Defendants.

Case No. 1:23-cv-01142
Hon. Hala Y. Jarbou
Magistrate Judge Sally J Berens

**BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION TO ESCROW FUNDS AND DISCHARGE MORTGAGE**

# EXHIBIT 4

UNOFFICIAL COPY

ERECORDING
2023R-15232
STATE OF MICHIGAN
GRAND TRAVERSE COUNTY
RECORDED 12/18/2023 03:37:34 PM
PEGGY HAINES REGISTER OF DEEDS
PAGE 1 OF 3

## SUBORDINATION AGREEMENT

**Prepared by and when Recorded
Mail to:
Westcor Land Title Insurance Co.
Attn: B. Sharpe/Claims (17561)
875 Concourse Parkway So., Ste. 200
Maitland, FL 32751**

THIS SUBORDINATION AGREEMENT is made on this 14th day of December 2023, by **Westcor Land Title Insurance Company,** a South Carolina corporation, with its place of business being 875 Concourse Parkway South, Suite 200, Maitland, FL 32751 ("Subordinating Lender") for the benefit of **Commercial Capital Bidco,** with its place of business being 133 Holiday Court, Franklin, TN  37067 ("Lender").

WHEREAS, Subordinating Lender is the holder of that certain Note and Future Advance Mortgage given by Equine Luxury Properties, LLC, dated December 16, 2022 and recorded in the office of the Register of Deeds of Grand Traverse County, Michigan, as **Instrument No. 2022R-19612,** on December 20, 2022; and subsequently assigned to Subordinating Lender by virtue of an Assignment of Mortgage dated November 16, 2023, and recorded in the office of the Register of Deeds of Grand Traverse County, Michigan, as **Instrument No.2023R-14900,** on December 11, 2023.

WHEREAS, **Commercial Capital Bidco** is the holder of a note and mortgage given by Equine Luxury Properties, LLC, dated July 28, 2022 and recorded in the office of the Register of Deeds of Grand Traverse County, Michigan, as **Instrument No. 2023R-10141,** on August 25, 2023.

WHEREAS, the subject Mortgages encumber the following Property:

**TOWNSHIP OF ACME, COUNTY OF GRAND TRAVERSE, STATE OF MICHIGAN**
**The Northeast ¼ of the Northeast ¼ and the East 28 acres of the Southeast ¼**
**of the Northeast ¼ , except road right-of-way, of Section 36 Town 28 North.**
**Range 10 West.**

NOW THEREFORE, for good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, it is hereby declared, understood and agreed as follows:

1. Subordinating Lender agrees to subordinate its Mortgage to Lender's mortgage, upon the terms and conditions set forth in this Agreement.
2. Subordinating Lender agrees that Lender's Mortgage is, at all times, in a superior and prior position to Subordinating Lender's Mortgage.
3. This Subordination Agreement shall not otherwise affect the validity, enforceability, or priority of Subordinating Lender's Mortgage.
4. This Subordination Agreement shall be binding upon and inure to the benefit of Lender and Subordinating Lender, and their respective heirs, successors and assigns.

Executed this _____14th_____ day of December 2023.

**Westcor Land Title Insurance Company,**
**a South Carolina corporation**

By: _____
                   Michael Schefstad

Its: _____CFO_____

# FLORIDA NOTARY ACKNOWLEDGEMENT
## (CORPORATION)

STATE OF FLORIDA,
COUNTY OF _____*Orange*_____

The foregoing instrument was acknowledged before me by means of ☑ physical presence ☐ online notarization, this _____*14th*_____ day of December, 2023, by _____*Michael Schefstad*_____ (Name of Officer or Agent, Title of Officer or Agent) of Westcor Land Title Insurance Company, a South Carolina corporation, on behalf of the corporation. He/she is personally known to me or has produced _____ (Type of Identification) as identification.

_____
Signature of Notary Public                                                    (Seal)

_____
Print, Type or Stamp Name of Notary

_____
Title or Rank

_____
Serial Number, if any

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

EQUINE LUXURY PROPERTIES, LLC, et al.,
Plaintiffs,

v.

COMMERCIAL CAPITAL BIDCO, INC., et al.,
Defendants.

Case No. 1:23-cv-01142
Hon. Hala Y. Jarbou
Magistrate Judge Sally J Berens

**BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION TO ESCROW FUNDS AND DISCHARGE MORTGAGE**

# EXHIBIT 5

University Title Agency
2701 Cambridge Court
106
Auburn Hills, MI 48326
(248) 218-1234

ALTA Seller's Settlement Statement

| File #: | 23-12437-MI | Property | V/L 000 Brackett Road (Parcels A-F) Williamsburg, MI 49690 | Settlement Date | 11/08/2023 |
|---|---|---|---|---|---|
| Prepared: | 11/07/2023 | | | Disbursement Date | 11/08/2023 |
| Escrow Officer: | Heather Monroe | | | | |
| | | Buyer | Flinthield's Horse Park, LLC 15355 De Havilland Court Wellington, FL 33414 | | |
| | | Seller | Equine Luxury Properties, LLC 100 West Long Lake Road Suite 102 Bloomfield Hills, MI 48304 | | |
| | | Lender | | | |

| Description | Seller | |
|---|---|---|
| | Debit | Credit |
| **Financial** | | |
| Sales Price of Property | | $2,000,000.00 |
| | | |
| **Prorations/Adjustments** | | |
| City/Town Taxes 11/08/2023 to 01/01/2024 | | $1,925.37 |
| County Taxes 01/01/2023 to 11/08/2023 | $2,521.66 | |
| | | |
| **Payoff(s)** | | |
| Payoff to MVG Capital LLC | $556,867.36 | |
| | | |
| **Government Recording and Transfer Charges** | | |
| County Transfer Tax (Deed) to Grand Traverse County Register of Deeds | $2,200.00 | |
| Discharge of Mortgage Recording Fee to Grand Traverse County Register of Deeds | $30.00 | |
| State Transfer Tax (Deed) to Grand Traverse County Register of Deeds | $15,000.00 | |
| | | |
| **Commission** | | |
| Listing Agent Commission to Great Lakes Sotheby's International Realty | $40,000.00 | |
| Selling Agent Commission to Exit Northern Shores Realty | $40,000.00 | |
| | | |
| **Title Charges & Escrow / Settlement Charges** | | |
| Title - Settlement Fee to University Title Agency | $350.00 | |
| Title - Tax Look Up Fee to University Title Agency | $15.00 | |
| Title Wave Fee to University Title Agency | $261.00 | |
| Title - Owner's Title Policy to Westcor Land Title Insurance Company | $6,262.00 | |
| | | |
| **Miscellaneous** | | |
| 2023 Summer Tax 01-236-001-01 to Acme Township Treasurer | $1,107.48 | |
| 2023 Summer Tax 01-236-001-02 to Acme Township Treasurer | $992.77 | |
| 2023 Summer Tax 01-236-001-03 to Acme Township Treasurer | $992.77 | |
| 2023 Summer Tax 01-236-001-04 to Acme Township Treasurer | $3,172.20 | |
| 2023 Summer Tax 01-236-001-05 to Acme Township Treasurer | $5,968.64 | |
| 2023 Summer Tax 01-236-001-06 to Acme Township Treasurer | $1,166.81 | |
| Certificate of Survey to Grand Traverse County Register of Deeds | $30.00 | |
| Delinquent Tax Bill Search Fee to Grand Traverse County Treasurer | $5.00 | |
| Wire Fee to Riverside Title | $35.00 | |

|  | Debit | Credit |
|---|---|---|
| Subtotals | $676,977.69 | $2,001,925.37 |
| Due to Seller | $1,324,947.68 |  |
| Totals | $2,001,925.37 | $2,001,925.37 |

**Acknowledgement**

We/I have carefully reviewed the Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the Settlement Statement.

We/I authorize University Title Agency to cause the funds to be disbursed in accordance with this statement.

Equine Luxury Properties, LLC, a Michigan Limited Liability Company

By: _____    _____
Dean Groulx, Sole Member                                                        Date

Broker: _____    _____
                                                                                          Date

Settlement Agent _____    _____
                                                                                          Date

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

EQUINE LUXURY PROPERTIES, LLC, et al.,
Plaintiffs,

v.

COMMERCIAL CAPITAL BIDCO, INC., et al.,
Defendants.

Case No. 1:23-cv-01142
Hon. Hala Y. Jarbou
Magistrate Judge Sally J Berens

**BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION TO ESCROW FUNDS AND DISCHARGE MORTGAGE**

# EXHIBIT 6

**Paul Nine**

| | |
|---|---|
| **From:** | Aaron Bayliss <abayliss@trottlaw.com> |
| **Sent:** | Friday, December 15, 2023 10:39 AM |
| **To:** | Paul Nine |
| **Subject:** | RE: Equine Luxury Properties v. CCB |

Good Morning Paul,

I was attending to court matters most of the day yesterday. I will review with my client and get back to you.

Thank you,
Aaron

------------------------------------------------------

**Aaron Bayliss**
Attorney, Litigation Department
Licensed in Michigan

**TROTT LAW, P.C.**
31440 Northwestern Highway, Suite 145
Farmington Hills, Michigan 48334
Direct Dial: 248.579.8704
Facsimile: 248.205.4118
abayliss@trottlaw.com
**trottlaw.com**

Supervisor: William D. Meagher
Mr. Meagher's Direct Dial: 248.594.5404
Mr. Meagher's Email: wmeagher@trottlaw.com

*Trott Law. Over 40 Years of Legal Excellence.*

This firm is a debt collector attempting to collect a debt.  Any information we obtain will be used for that purpose.

To the extent your original obligation has been discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and/or is notice of the creditor's intent to enforce a lien against the property and does not constitute a demand for payment or an attempt to impose personal liability for such obligation.

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

EQUINE LUXURY PROPERTIES, LLC, et al.,
Plaintiffs,

v.

COMMERCIAL CAPITAL BIDCO, INC., et al.,
Defendants.

Case No. 1:23-cv-01142
Hon. Hala Y. Jarbou
Magistrate Judge Sally J Berens

**BRIEF IN SUPPORT OF**
**PLAINTIFFS' MOTION TO ESCROW FUNDS AND DISCHARGE MORTGAGE**

# EXHIBIT 7

**Paul Nine**

**From:**       Aaron Bayliss <abayliss@trottlaw.com>
**Sent:**       Wednesday, December 27, 2023 11:48 AM
**To:**         Paul Nine
**Subject:**    RE: Equine Luxury Properties v. CCB

Good Morning Paul,

I have spoken to my client regarding whether my client would discharge the mortgage if a sale were to occur and the sale proceeds were deposited into the court's escrow.

My client is not agreeable to this.

Thank you,
Aaron

-------------------------------------------------------------------------

**Aaron Bayliss**
Attorney, Litigation Department
Licensed in Michigan

**TROTT LAW, P.C.**
31440 Northwestern Highway, Suite 145
Farmington Hills, Michigan 48334
Direct Dial: 248.579.8704
Facsimile: 248.205.4118
abayliss@trottlaw.com
**trottlaw.com**

Supervisor: William D. Meagher
Mr. Meagher's Direct Dial: 248.594.5404
Mr. Meagher's Email: wmeagher@trottlaw.com

*Trott Law. Over 40 Years of Legal Excellence.*

This firm is a debt collector attempting to collect a debt.  Any information we obtain will be used for that purpose.

To the extent your original obligation has been discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and/or is notice of the creditor's intent to enforce a lien against the property and does not constitute a demand for payment or an attempt to impose personal liability for such obligation.