UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUINE LUXURY PROPERTIES, LLC, et al.,

    Plaintiffs,

v.

COMMERCIAL CAPITAL BIDCO, INC., et al.,

    Defendants.
_____/

Case No. 1:23-cv-1142

Hon. Hala Y. Jarbou

## **OPINION**

Plaintiffs Equine Luxury Properties, LLC ("Equine") and 138 River Street, LLC ("138 River"), brought this action in state court for declaratory and injunctive relief against Defendants Commercial Capital BIDCO, Inc. ("CCB") and Trott Law, P.C. ("Trott Law"), seeking to prevent Defendants from foreclosing on two properties located in Michigan. Defendants removed the action to this Court on the basis of diversity jurisdiction. Before the Court is Plaintiffs' motion to remand the case for lack of subject matter jurisdiction (ECF No. 16) and Plaintiffs' motion for summary judgment (ECF No. 18). The Court will deny both motions.

## **I. BACKGROUND**

In their complaint, Plaintiffs allege that they entered into a loan agreement[1] in July 2022 with CCB, secured by two properties in Michigan owned by Plaintiffs. (Verified Compl. ¶ 7, ECF No. 7.) A Michigan loan broker proposed the loan to Plaintiffs and CCB's CEO traveled to Michigan to meet with Plaintiffs and to inspect the properties. (*Id.* ¶¶ 16, 18.) CCB agreed to give Plaintiffs a one-year loan for $1,834,000 at 18% interest, including fees. (*Id.* ¶ 19.) The loan also

---

[1] The loan agreement has multiple parts: a promissory note, two mortgages, and a personal guaranty. For simplicity's sake, the Court will refer to all of them, collectively, as the loan agreement.

included a "referral fee" from CCB to the mortgage broker that was charged against the loan proceeds. (*Id.* ¶ 20.) Plaintiffs allegedly signed the promissory note and mortgage in Michigan, and CCB allegedly funded the loan in Michigan and disbursed the funds to Plaintiffs in Michigan. (*Id.* ¶¶ 21-22.)

Plaintiffs made interest-only payments on the loan from September 2022 to July 2023. (*Id.* ¶ 24.) In August 2023, the parties agreed to extend the maturity date of the loan from July 28, 2023, to January 28, 2024, entering into an amended and restated promissory note that set forth the relevant terms. (*Id.* ¶ 26.) Plaintiffs signed the amended promissory note in Michigan.

The six-month loan extension allegedly charged more than 26% in interest on an annual basis, and after CCB declared default, the interest rate increased to "more than 32%." (*Id.* ¶¶ 12, 27.) The stated rate was 14%, but when accounting for a 6% origination fee, as well as processing and underwriting fees, Plaintiffs allege the actual rate of annual interest was 26%. (*Id.* ¶ 30.) When CCB declared default, it triggered "default interest," which was 20%, resulting in an effective annual rate of more than 32% when accounting for the fees mentioned above. (*Id.* ¶ 31.)

Plaintiffs objected to the interest rate because Michigan's criminal usury statute makes it unlawful for lenders to charge more than 25% interest per year "or the equivalent rate for a longer or shorter period." Mich. Comp. Laws § 438.41. On August 18, 2023, Trott Law sent a notice of default "on behalf of CCB" and demanded payment. (Compl. ¶ 32.) A few days later, CCB sent a payoff statement to 138 River, demanding full payment of the debt. Plaintiffs objected on the basis of the Michigan and Tennessee usury statutes.

CCB allegedly attempted to foreclose on the mortgaged properties by advertisement, under Michigan law and a "power of sale" clause in the loan agreement. (*Id.* ¶ 7.) "Through its attorneys, Trott Law," CCB allegedly published notice of foreclosure and Trott Law scheduled a foreclosure

sale for October 2023.  (*Id.* ¶ 14.)  Plaintiffs believe that CCB sold its interests in the loan to Cogent Bank ("Cogent") in 2022 and that CCB is the servicing agent for Cogent.  (*Id.* ¶ 41.)  Because the foreclosure by advertisement did not identify Cogent, Plaintiffs believe that the scheduled foreclosure was improper under Michigan law.

Plaintiffs filed this action seeking a declaration that the loan is illegal and unenforceable under "Michigan's wrongful-conduct rule" because it violates "Michigan's criminal usury act[.]" (*Id.* ¶ 11.)  Plaintiffs also seek an injunction against Defendants barring them from taking action to enforce the loan.  While the case was pending in state court, the state court granted a temporary injunction preventing Defendants from foreclosing on Plaintiffs' properties.  Defendants then removed the case to this Court.

## II. MOTION TO REMAND

The Court must remand the case to state court if the Court lacks subject matter jurisdiction. Diversity jurisdiction requires complete diversity of the parties.  The parties do not dispute that complete diversity is lacking here because Plaintiffs and Defendant Trott Law are all citizens of Michigan.  However, Defendants argue that the Court can ignore the citizenship of Trott Law because it is not a proper party.  In other words, Defendants contend that Trott Law has been fraudulently joined to the action.  Without Trott Law, there would be complete diversity because CCB, the only other defendant, is a citizen of Tennessee.  Also, the amount in controversy exceeds $75,000.

"[F]raudulent joinder of non-diverse defendants will not defeat removal on diversity grounds."  *Cline v. Dart Transit Co.*, 804 F. App'x 307, 310 (6th Cir. 2020) (quoting *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009)).  "Fraudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action." *Id.* (quoting *Saginaw Hous. Comm'n*, 576 F.3d at 624).  "The removing party has the burden to

3

prove fraudulent joinder, and it 'must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law.'" *Tennial v. Bank of Am., N.A.*, No. 17-6377, 2020 WL 2530872, at *2 (6th Cir. Apr. 15, 2020) (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)). "[A]ny disputed questions [of] fact and ambiguities in the controlling state law [should be resolved] . . . in favor of the nonremoving party." *Roof v. Bel Brands USA, Inc.*, 641 F. App'x 492, 496 (6th Cir. 2016) (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (second and third alterations in original)). More broadly, "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Coyne*, 183 F.3d at 493.

The Court must decide whether Plaintiffs have any colorable claim against Trott Law. In Michigan,

> [t]he purpose of a declaratory judgment is to enable the parties to obtain adjudication of rights before an actual injury occurs, to settle a matter before it ripens into a violation of the law or a breach of contract, or to avoid multiplicity of actions by affording a remedy for declaring in expedient action the rights and obligations of all litigants.

*Mich. Republican Party v. Donahue*, No. 364048, 2024 WL 995238, at *9 (Mich. Ct. App. Mar. 7, 2024) (quoting *Rose v. State Farm Mut. Auto. Ins. Co.*, 732 N.W.2d 160, 162 (Mich. Ct. App. 2006)). Here, Plaintiffs seek a declaration as to their obligations under their loan agreement with CCB. They contend that the loan charges a usurious rate of interest, in violation of Michigan law, rendering the agreement illegal and unenforceable.

"The basic rule in Michigan is that usury is a *defense* and that there is no right to repayment of usurious interest by means of an independent action." *Thelen v. Ducharme*, 390 N.W.2d 264, 268 (Mich. Ct. App. 1986) (emphasis added). "Where a loan violates the [civil] usury statutes, lenders are . . . barred from recovering any interest, late fees, court costs, or attorney fees." *Meklir v. J.C. Penney Co.*, No. 253089, 2005 WL 1579658, at *7 (Mich. Ct. App. July 5, 2005). "A

borrower may rely on the [usury] statute only when a lender brings an action to enforce such a [usurious] contract." *Sand v. Borrowers Network, LLC*, Nos. 285807, 290326, 2010 WL 99004, at *3 (Mich. Ct. App. Jan. 12, 2010).

Furthermore, "[u]nder Michigan's wrongful conduct rule, a plaintiff's claim will be barred if it is based, in whole or in part, on the plaintiff's own illegal conduct." *Scalici v. Bank One, NA*, Nos. 254632, 254633, 254634, 2005 WL 2291732, at *2 (Mich. Ct. App. Sept. 20, 2005). "This is true even where the defendant has participated equally in the illegal activity." *Id.* Charging a rate of interest higher than that permitted by Michigan's *criminal* usury statute, Mich. Comp. Laws § 438.41, can trigger the wrongful conduct rule. *Id.* at *5. Plaintiffs invoke this rule as the basis for their request to declare the loan agreement unenforceable.

As indicated, Plaintiffs' declaratory judgment action is focused solely on its obligations to CCB under the loan agreement. Plaintiffs' arguments regarding usury and wrongful conduct are defenses to enforcement of that agreement. Trott Law is not a party to that agreement. According to the complaint, Trott Law's only connection to the case is its role as counsel for CCB. Indeed, Plaintiffs expressly allege that when Trott Law sent them a notice of default and initiated the foreclosure by advertisement, it acted on behalf of CCB. In other words, Trott Law was not attempting to enforce its own rights against Plaintiffs. Thus, as to Trott Law, there is no colorable claim because there are no rights to adjudicate between Plaintiffs and Trott Law. Whatever the Court decides about CCB's rights will necessarily apply to Trott Law to the extent it acts on behalf of CCB.

In other cases where a debtor challenging a foreclosure sued the lender and the lender's foreclosure attorneys, courts in Michigan have not hesitated to conclude that the foreclosure attorneys were fraudulently joined. *See, e.g.*, *Fuller v. Select Portfolio Servicing, Inc.*, No. 1:19-

5

CV-28, 2019 WL 13102132, at *2 (W.D. Mich. Nov. 13, 2019) ("In cases challenging mortgage foreclosures such as this one, a plaintiff does not have a cause of action against foreclosure counsel, who serves as an agent for the bank." (quoting *Conlin v. Mortg. Elec. Registration Sys., Inc.*, No. 11-15352, 2011 WL 6440705, at *1 (E.D. Mich. Dec. 16, 2011))); *Morton v. Bank of Am., N.A.*, No. 1:12-CV-511, 2013 WL 3716841, at *2 (W.D. Mich. July 12, 2013) ("As a general rule, a party has no claim against the attorney representing his opponent because the attorney does not owe the plaintiff a legal duty."); *Lyons v. Trott & Trott*, 905 F. Supp. 2d 768, 772 (E.D. Mich. 2012) ("Other courts in this district have concluded that a plaintiff in a foreclosure action has no independent state law claim against Trott (or any other similarly situated attorney/local designee) for conduct related to an alleged wrongful foreclosure where Trott is acting solely as the attorney/agent for the lender or loan servicer[.]"). "The duties owed to a client by an attorney are not the 'functional equivalent of a duty of care owed to the client's adversary.'" *Edwards v. Standard Fed. Bank, N.A.*, No. 08-12146, 2009 WL 92157, at *3 (E.D. Mich. Jan. 14, 2009) (quoting *Friedman v. Dorzoc*, 312 N.W.2d 585, 591 (Mich. 1981)). "Furthermore, courts have been reluctant to allow actions by third parties against attorneys, who were engaged in the representation of their clients, because of 'the potential for conflicts of interest that could seriously undermine counsel's duty of loyalty to the client.'" *Id.* (quoting *Beaty v. Hertzberg & Golden, P.C.*, 571 N.W.2d 716, 720 (Mich. 1997)). The same logic applies here.

Plaintiffs rely on *Allan v. M & S Mortgage Co.*, 359 N.W.2d 238 (Mich Ct. App. 1984), in which homeowners filed a complaint for declaratory relief and for relief under Michigan's Consumer Protection Act (MCPA), Mich. Comp. Laws § 445.901 et seq., against the holder of a mortgage on their home and against the mortgage holder's attorney, Goldwyn Robinson, who had initiated a foreclosure on the plaintiffs' home on behalf of the mortgagee. *Id.* at 240. But Robinson

was not a typical foreclosure attorney. He had previously represented the plaintiffs when they entered into the mortgage; he helped them form a corporation so that they could borrow money at a higher interest rate than would be permissible for a loan to individuals. *Id.* Plaintiffs sought a declaration that the interest rate in their mortgage violated Michigan's usury laws and that the corporation was a sham created to circumvent those laws. *Id.* at 241. They also asserted a claim under the MCPA to the effect that "the entire process by which they were incorporated to obtain the loan involved violations of the act." *Id.* at 244-45.

The court in *Allan* held that the plaintiffs stated a claim for declaratory relief because there was an "actual controversy" at stake in that the lender had initiated foreclosure on the mortgage. In those circumstances, the plaintiffs were "entitled to a declaration of the exact amount of money due under the note[.]" *Id.* at 244. The court also held that the plaintiffs stated a claim against the defendants under the MCPA. *Id.*

Plaintiffs argue that *Allan* recognizes that a mortgagor in Michigan threatened by foreclosure can seek declaratory relief against both the mortgagee pursuing foreclosure and the mortgagee's foreclosure attorney. *Allan* does not support that premise. The critical distinction between *Allan* and Plaintiffs' case is that the foreclosure attorney in *Allan* had represented the property owners before the foreclosure. They retained him to create the corporation that they used to obtain then loan. *Id.* at 240. As such, he owed them a legal duty. Later, the homeowners ostensibly brought a claim against him under the MCPA due to his involvement in the process to create the sham corporation. Thus, unlike Plaintiffs, they did not rely solely on a claim for declaratory relief regarding their obligations under the mortgage. Indeed, deciding how much Plaintiffs owe CCB does not require the court to adjudicate a dispute between Plaintiffs and Trott Law, who does not owe them a legal duty. Thus, *Allan* is inapposite.

Plaintiffs' request for injunctive relief does not change the analysis. A request for an injunction is not an independent claim; "an injunction is a remedy, not a claim." *Madej v. Maiden*, 951 F.3d 364, 369 (6th Cir. 2020); *accord Mettler Walloon, LLC v. Melrose Twp.*, 761 N.W.2d 293, 317 (Mich. Ct. App. 2008). And although Trott Law took steps to begin the foreclosure process, Plaintiffs allege that it did so *on behalf of* CCB. Thus, an injunction against CCB alone would prevent Trott Law from proceeding with foreclosure. There is no need for Trott Law to be a party to the case.

In short, Plaintiffs assert no colorable claim against Trott Law. Consequently, the Court can ignore Trott Law's citizenship because it was fraudulently joined to this action. Without Trott Law, the parties are diverse, so the Court has subject matter jurisdiction over the case and will deny Plaintiffs' motion to remand the case to state court.

### III. MOTION FOR SUMMARY JUDGMENT

Plaintiffs ask the Court to grant summary judgment on their claim that the loan agreement with CCB is unenforceable under Michigan law because it charged a rate of interest that exceeded the 25% rate in Michigan's criminal usury statute, Mich. Comp. Laws § 438.41.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Summary judgment is not an opportunity for the Court to resolve factual disputes. *Id.* at 249. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

8

### A. Summary of Permissible Interest Rates Under Michigan Law

Michigan's criminal usury statute provides, in relevant part:

> A person is guilty of criminal usury when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding 25% at simple interest per annum or the equivalent rate for a longer or shorter period.

Mich. Comp. Laws § 438.41.

Apart from the criminal usury statute, Michigan law generally allows parties to agree in writing to any rate of interest "not exceeding 7% per annum." Mich. Comp. Laws § 438.31(1). But there are various exceptions to the foregoing limits. One is the "business entity" exception, which provides as follows:

> (1)(a) "Business entity" means a corporation, trust, estate, partnership, cooperative, or association or a natural person who furnishes to the extender of the credit a sworn statement in writing specifying the type of business and business purpose for which the proceeds of the loan or other extension of credit will be used. . . .
>
> . . .
>
> (2) Notwithstanding Act No. 326 of the Public Acts of 1966, being sections 438.31 to 438.33 of the Michigan Compiled Laws, and Act No. 259 of the Public Acts of 1968, being sections 438.41 to 438.42 of the Michigan Compiled Laws, but subject to any other applicable law of this state or of the United States which regulates the rate of interest, it is lawful in connection with an extension of credit to a business entity by a state or national chartered bank, a state or federal chartered savings bank, a state or federal chartered savings and loan association, a state or federal chartered credit union, insurance carrier, finance subsidiary of a manufacturing corporation, or a related entity for the parties to agree in writing to any rate of interest.
>
> (3) Notwithstanding Act No. 326 of the Public Acts of 1966, it is lawful in connection with an extension of credit to a business entity by any person other than a state or nationally chartered bank, a state or federal chartered savings bank, a state or federal chartered savings and loan association, a state or federal chartered credit union, insurance carrier, finance subsidiary of a manufacturing corporation, or a related entity for the parties to agree in writing to any rate of interest not exceeding the rate allowed under Act No. 259 of the Public Acts of 1968.

Mich. Comp. Laws § 438.61.

In other words, Mich. Comp. Laws § 438.61(2) permits business entities to agree to *any rate of interest* when borrowing money from certain regulated lenders. And Mich. Comp. Laws § 438.61(3) permits business entities to agree to any rate of interest *up to the amount permitted by the criminal usury statute* when borrowing money from nonregulated lenders.

Another exception relevant here permits a loan at any rate of interest when the loan is secured by real property that is not a single-family residence:

> The parties to a note, bond, or other indebtedness of $100,000.00 or more, the bona fide primary security for which is a lien against real property other than a single family residence, or the parties to a land contract of such amount and nature, may agree in writing for the payment of any rate of interest.

Mich. Comp. Laws § 438.31c(11).

### B. Choice of Law

CCB responds that Michigan law does not apply here because the parties agreed that Tennessee law would govern their loan agreement. The amended promissory note provides as follows:

> The validity, enforceability, and construction of this Note, and the rights and obligations of Borrower and Holder hereunder shall be governed by, construed under, and determined according to, the laws of the State of Tennessee applicable to contracts executed and performed within this State . . . .

(Am. & Restated Promissory Note, ECF No. 7, PageID.271.)

Plaintiffs contend that there are conflicting choice-of-law provisions because the mortgages reference Michigan law with respect to various rights and obligations of the parties, including foreclosure, the assignment of rents and leases, waste, and security agreements. (*See, e.g.*, Commercial Mortgage, ECF No. 7, PageID.248, 250-252, 254.) At issue in this case, however, is CCB's ability to enforce Plaintiffs' obligations in the note. According to the promissory note, Tennessee law governs that issue. Nothing in the mortgages says otherwise. Thus, the applicable agreement chooses Tennessee law.

To determine whether to enforce the parties' choice of law, a federal court sitting in diversity applies the choice of law rules of the forum state. *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000). Thus, Michigan's rules apply. Michigan courts follow § 187 of the Second Restatement on Conflict of Laws. *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 703-04 (Mich. 1995). Under that section, the Court applies the law chosen by the parties unless one of two exceptions applies. *Id.* at 704. First, the parties' choice will not be followed "if the chosen state has no substantial relationship to the parties or the transaction, or when there is no reasonable basis for choosing that state's law." *Id.* Second, the parties' choice will be disregarded when the chosen state's law "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." *Id.* (quoting Restatement (Second) of Conflict of Laws § 187 (1971)).

### 1. Exception One: Substantial Relationship

The first exception does not apply here because Tennessee has a substantial relationship to the parties or the transaction. Although Plaintiffs are Michigan entities who allegedly entered into the loan agreement in Michigan to support their businesses operating in Michigan, the loan originated from a Tennessee lender licensed under Tennessee law.

### 2. Exception Two: Fundamental Policy

The second exception potentially applies because Michigan's usury laws embody a "public policy . . . to protect borrowers from excessive interest rates imposed by lenders." *Soaring Pine Capital Real Estate & Debt Fund II, LLC v. Park St. Grp. Realty Servs., LLC*, 999 N.W.2d 8, 16 (Mich. 2023). This protection is so strong that "the burden [is] on the lender to charge a lawful interest rate . . . . By contrast, a borrower has no obligation—statutory or otherwise—to ensure

11

the agreed-upon interest rate is not usurious." *Id.* at 20. "[L]enders cannot avoid civil remedies for usury through creative contracting or by claiming ignorance." *Id.* at 21. Moreover, unlike many other states, Michigan has a criminal usury statute. That statute seeks "to punish lenders who engage in usurious conduct and prevent future attempts to collect excessive interest." *Id.* Even sophisticated borrowers are entitled to protection from usury, as there is no "categorical distinction between 'sophisticated' commercial business entities and other borrowers . . . clearly reflected in Michigan's usury statutes or the accompanying caselaw." *Id.* at 22. In short, these protections reflect a fundamental policy of Michigan to protect Michigan borrowers, including businesses like Plaintiffs, from excessive interest rates. *See* Restatement (Second) of Conflict of Laws § 187 cmt. g (noting that "a fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal").

Like Michigan, Tennessee also has usury laws whose purpose is to protect borrowers "from the rapacity of money lenders." *Caldwell & Co. v. Lea*, 272 S.W.2d 715, 716 (Tenn. 1925). Tennessee law also allows borrowers to raise usury as a defense to collection. Tenn. Code § 47-14-110. However, CCB is not subject to many of Tennessee's interest rate restrictions because it is a special entity formed under Tennessee's BIDCO Act, which authorizes CCB to charge rates as high as 30%, i.e., the "maximum rate that may be charged or received by any other lender in Tennessee." Tenn. Code § 45-8-210(b)(6)(A); *see* Tenn. Code § 45-2-1904(a) (permitting a registered bank to charge interest at up to 30% per year). The stated purpose of the BIDCO Act is to make financial assistance more readily available to businesses "in the state" and to promote economic development "in the state." *See* Tenn. Code § 45-8-202. In other words, its focus is on

loans to in-state borrowers for the development of business in Tennessee, rather than on loans to out-of-state borrowers for the development of business outside Tennessee.[2]

Michigan has a materially greater interest in protecting its local borrowers from the collection of usurious rates of interest than Tennessee has in ensuring its local BIDCO lenders can recover from out-of-state borrowers, particularly where that loan transaction occurred in Michigan and is secured by property located in Michigan.

But "[i]n order for the chosen state's law to violate the fundamental policy of [the other locale], it must be shown that there are significant differences between the application of the law of the two states." *Tele-Save Merch. Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1123 (6th Cir. 1987). Plaintiffs have not made that showing here because their loan agreement falls under a longstanding exception to Michigan's usury restrictions for parties to a loan greater than $100,000.00 that is secured by a lien on real property that is not a single-family residence. *See* Mich. Comp. Laws § 438.31c(11).

The exception in § 438.31c(11) expressly allows parties to agree to "any rate of interest." *Id.* As required by that section, the loan at issue here is more than $100,000.00 and was secured by real property that is not a single-family residence.[3] That exception is not subject to rate restrictions elsewhere in Michigan's usury laws. *See Mac Leod v. Bay Haven Marina, Inc.*, No. 187688, 1997 WL 33347816, at *2 (Mich. Ct. App. June 13, 1997) (holding that § 438.31c(11) is an exception to the 11% cap in § 438.31c(6)); *Kansas City Life Ins. Co. v. Durant*, 298 N.W.2d 630, 633 (Mich. Ct. App. 1980) (holding that § 438.31c(11), formerly § 438.31c(9), is an exception

---

[2] To clarify, the Court does not hold that CCB lacked authority under the BIDCO Act to issue the loan, as Plaintiffs imply. Instead, the Court is simply noting that the stated purposes of the BIDCO Act suggest that Tennessee has less of an interest in enforcing loans permitted by that statute against out-of-state borrowers than Michigan has in protecting its local borrowers from usury.

[3] One of the properties is an unimproved lot; the other is a "mixed-use" building. (Commercial Mortgage, ECF No. 7, PageID.258; Pls.' Mot. for TRO, ECF No. 7, PageID.319.)

to the cap in § 438.31c(2)); 1979-1980 Mich. Op. Att'y Gen. 877 (1980) (opining that loans under § 438.31c(11), formerly § 438.31c(9), are not subject to the 25% cap in the criminal usury statute). Indeed, Michigan's criminal usury statute prohibits charging more than 25% interest "when . . . not authorized or permitted by law[.]" Mich. Comp. Laws § 438.41.  Section 438.31c(11) is a law permitting CCB to charge Michigan borrowers any rate of interest for a loan secured by real property that is not a single-family residence.  Thus, CCB can rely on that law without running afoul of Michigan's criminal usury statute.

For similar reasons, the provision of Michigan's LLC statute regarding interest rates is not implicated here.  That provision provides that a limited liability company "may agree in writing to pay any rate of interest as long as that rate of interest is not in excess of the rate set forth in [Mich. Comp. Laws § 438.41]." Mich. Comp. Laws § 450.4212.  Because § 438.31c(11) authorizes a rate of interest higher than 25%, and because § 438.41 only prohibits interest rates above 25% when "not authorized" by law, Plaintiffs did not agree to an interest rate in excess of what §§ 438.41 and 450.4212 allow.

Plaintiffs point to the business entity exemption in Mich. Comp. Laws § 438.61(3), contending that because Plaintiffs are business entities who obtained a loan from a nonregulated lender, then CCB is subject to "the rate allowed [in the criminal usury statute, Mich. Comp. Laws § 438.41]," which is 25%.  *See* Mich. Comp. Laws § 438.61(3).  However, the same logic discussed above applies here as well.  In other words, § 438.41 prohibits charging rates higher than 25% when not authorized by law, but § 438.31c(11) is a law that permits charging a rate higher than 25%.  Thus, the loan in this case does not conflict with the business entity exception in § 438.61(3).

Plaintiffs note that the business entity exception in § 438.61(3) expressly applies "[n]otwithstanding Act No. 326 of the Public Acts of 1966." Mich. Comp. Laws § 438.61(3).  Act

14

No. 326 of the Public Acts of 1966 encompasses sections 438.31 to 438.33, and therefore includes § 438.31c(11).  According to Plaintiffs, this "notwithstanding" language means that the criminal usury limit referenced in § 438.61(3) supersedes and circumscribes the "any rate of interest" language found in § 438.31c(11).  The Court disagrees.  As discussed above, applying § 438.31c(11) here is *consistent with* § 438.61(3) because the criminal usury statute permits rates above 25% when authorized by law.

Plaintiffs argue that such an interpretation would render the "notwithstanding" language in § 438.61(3) meaningless.  To the contrary, Act No. 326 of the Public Acts of 1966 contains several interest rate restrictions that are lower than the criminal usury rate of 25%.  One such rate is the general usury limit of 7% found in § 438.31.  Other provisions cap certain mortgage interest rates at 11%.  *See* Mich. Comp. Laws §§ 438.31c(6), 438.31c(7), 438.31c(8).  Accordingly, the "notwithstanding" language makes clear that business entities obtaining loans from nonregulated lenders are not subject to the foregoing limits; they can obtain loans at a rate as high as 25%.

Plaintiffs also argue that such an interpretation would render meaningless the phrase "any rate of interest not exceeding the rate allowed under [the criminal usury statute]." *See* Mich. Comp. Laws § 438.61(3).  Not so.  In most circumstances, this phrase sets 25% as the maximum rate for business entities borrowing from nonregulated lenders.  After all, many business loans are not secured by real property, so there are many circumstances where § 438.31c(11) would not apply.

Plaintiffs' interpretation is at odds with the purpose of the business entity exemption, which was enacted to "exempt loans to business entities from the provisions of the usury statute." 1970 Mich. Pub. Acts 143.  Plaintiffs' interpretation would transform an expansion of lending rights for business entities into a contraction of those rights.  It would prohibit business entities from relying on exceptions that might apply outside of Mich. Comp. Laws § 438.61.

15

The history of the business entity exemption also reflects an intent to expand the rights of business entities, not limit them. The original exemption only applied to business entities taking loans from "any state or national chartered bank or insurance carrier[.]" 1970 Mich. Pub. Acts 143. Because that exemption was "subject to the provisions of any other applicable law," it implicitly limited such loans to the criminal usury rate. *See id.* In 1978, the act was amended to include loans by business entities from "any state or national chartered bank, insurance carrier, *or finance subsidiary of a manufacturing corporation*." 1978 Mich. Pub. Acts 42 (emphasis added). An amendment in 1983 added an exemption for business entities taking loans from nonregulated lenders, capping such loans at 15%. 1983 Mich. Pub. Acts 37-38. In 1997, the act was amended to its current form, allowing business entities taking loans from certain regulated lenders to agree to *any* rate of interest, notwithstanding the criminal usury statute, and increasing the 15% cap on loans from other types of lenders to the rate permitted by the criminal usury statute. 1996 Mich. Pub. Acts 2300. At each stage, the legislature expanded the ability of business entities to obtain loans at higher interest rates. Plaintiffs' interpretation runs in the opposite direction.

The exception in Mich. Comp. Laws § 438.31c for loans exceeding $100,000.00 secured by real property other than a single-family residence first appeared in 1973. 1973 Mich. Pub. Acts 21. The language of that exception has remained substantially the same since its adoption, despite multiple amendments to other sections of § 438.31c from 1973 to 1990. There is no indication that the Michigan legislature intended the business entity exemption to circumscribe the exception in § 438.31c(11).

In short, CCB can rely on the exception in Mich. Comp. Laws § 438.31c(11) to avoid the usury restrictions in Michigan law. That exception permitted CCB to charge Plaintiffs any rate of interest to which they agreed in writing. Accordingly, Plaintiffs have not shown that Michigan

16

law prohibits the loan between them and CCB. As such, Plaintiffs have not shown that the Court should disregard Plaintiffs' selection of Tennessee law in their loan agreement with CCB. For similar reasons, Plaintiffs have not shown that their agreement with CCB is unenforceable.

## IV. CONCLUSION

For the reasons herein, the Court has subject matter jurisdiction because Trott Law was fraudulently joined to the action. Accordingly, the Court will deny Plaintiffs' motion to remand and dismiss Trott Law due to fraudulent joinder.

Furthermore, the Court is not persuaded that Plaintiffs are entitled to a declaration that their loan agreement with CCB is unenforceable or that it violates Michigan's usury laws. Accordingly, the Court will deny Plaintiffs' motion for summary judgment.

Dated: May 30, 2024                              /s/ Hala Y. Jarbou
                                                 HALA Y. JARBOU
                                                 CHIEF UNITED STATES DISTRICT JUDGE