UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUINE LUXURY PROPERTIES, LLC, et al.,

    Plaintiffs,

v.

COMMERCIAL CAPITAL BIDCO, INC., et al.,

    Defendants.

                                                                   /

Case No. 1:23-cv-1142

Hon. Hala Y. Jarbou

## **OPINION**

Plaintiffs Equine Luxury Properties, LLC ("Equine") and 138 River Street, LLC ("138 River") brought this action in state court for declaratory and injunctive relief against Defendant Commercial Capital BIDCO, Inc. ("CCB") seeking to prevent CCB from foreclosing on two properties located in Michigan. CCB removed the action to this Court on the basis of diversity jurisdiction. Before the Court is CCB's motion for judgment on the pleadings and for summary judgment (ECF No. 59), as well as Plaintiffs' motion to amend the complaint (ECF No. 63). For the reasons below, the Court will grant CCB's motion and grant Plaintiffs' motion in part.

### **I. BACKGROUND**

#### **A. Plaintiffs' Complaint**

Plaintiffs allege that they entered into a loan agreement[1] in July 2022 with CCB, secured by two properties in Michigan owned by Plaintiffs. (Verified Compl. ¶ 7, ECF No. 7.) Plaintiffs made interest-only payments on the loan from September 2022 to July 2023. (*Id.* ¶ 24.) In August 2023, the parties agreed to extend the maturity date of the loan from July 28, 2023, to January 28,

---

[1] The loan agreement has multiple parts: a promissory note, two mortgages, and a personal guaranty. For simplicity's sake, the Court will refer to all of them, collectively, as the loan agreement.

2024, entering into an amended and restated promissory note that set forth the relevant terms. (*Id.* ¶ 26.)

The six-month loan extension allegedly charged more than 26% in interest on an annual basis, and after CCB declared default, the interest rate increased to "more than 32%." (*Id.* ¶¶ 12, 27.) The stated rate was 14%, but when accounting for a 6% origination fee, as well as processing and underwriting fees, Plaintiffs allege the actual rate of annual interest was 26%. (*Id.* ¶ 30.) When CCB declared default, it triggered "default interest," which was 20%, resulting in an effective annual rate of more than 32% when accounting for the fees mentioned above. (*Id.* ¶ 31.)

Plaintiffs objected to the interest rate because Michigan's criminal usury statute makes it unlawful for lenders to charge more than 25% interest per year "or the equivalent rate for a longer or shorter period." Mich. Comp. Laws § 438.41. On August 18, 2023, CCB's attorney sent Plaintiffs a notice of default and demanded payment. (Compl. ¶ 32.) A few days later, CCB sent a payoff statement to 138 River, demanding full payment of the debt. Plaintiffs objected on the basis of the Michigan and Tennessee usury statutes.

In September 2023, CCB allegedly attempted to foreclose on the mortgaged properties by advertisement under Michigan law and a "power of sale" clause in the loan agreement. (*Id.* ¶ 7.) CCB published a notice of the foreclosure and its attorney scheduled a foreclosure sale for October 2023. (*Id.* ¶ 14.) Plaintiffs believe that CCB sold its interests in the loan to Cogent Bank ("Cogent") in 2022 and that CCB is the servicing agent for Cogent. (*Id.* ¶ 41.) Plaintiffs apparently contend that the foreclosure was improper because CCB lacked the right to initiate it.

Plaintiffs filed this action seeking a declaration that the loan is illegal and unenforceable under "Michigan's wrongful-conduct rule" because it violates "Michigan's criminal usury act." (*Id.* ¶ 11.) Plaintiffs also seek a declaration that CCB did not comply with Michigan law regarding

2

foreclosure by advertisement because CCB transferred its interests in the mortgages to Cogent. Plaintiffs seek an injunction against CCB barring it from taking action to enforce the loan and foreclose on the properties.

### B. Procedural History

#### 1. CCB Removes the Case to Federal Court

While the case was pending in state court, the state court granted a temporary injunction preventing CCB from foreclosing on Plaintiffs' properties. CCB then removed the case to this Court on the basis of diversity jurisdiction.

#### 2. Court Denies Plaintiffs' Motion for Summary Judgment

Plaintiffs filed a motion for summary judgment on their claim that the loan agreement between it and CCB was unenforceable under Michigan law because the agreement allowed CCB to charge a rate of interest higher than that allowed by Michigan's usury law. In an opinion entered on May 30, 2024, this Court concluded that Tennessee law governed the parties' dispute over the enforceability of the loan agreement because that is the law the parties chose in their contract. (5/30/2024 Op. 16-17, ECF No. 57.) As part of its choice-of-law analysis, the Court also concluded that the parties' choice of Tennessee law would not violate a fundamental policy of Michigan because Michigan law permitted CCB to charge any rate of interest to which the parties agreed in writing. (*Id.* at 13.) In other words, the loan agreement is enforceable under Michigan law.

#### 3. Pending Motions

Relying on the Court's previous opinion, CCB has filed a motion for judgment on the pleadings and for summary judgment. Plaintiffs have responded to that motion.

3

Plaintiffs have filed a motion to amend their complaint. Their proposed amended complaint adds a claim that CCB attempted to charge a rate of interest that violates Tennessee law. CCB opposes the motion to amend the complaint.

## II. CCB'S MOTION FOR SUMMARY JUDGMENT

The Court will treat CCB's motion solely as one for summary judgment because the summary judgment standard allows the Court to consider all the attachments to the parties' briefing. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Summary judgment is not an opportunity for the Court to resolve factual disputes. *Id.* at 249. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

### A. Enforceability of Loan Agreement under Michigan Law

For the reasons stated in the Court's opinion of May 30, 2024, the loan agreement does not violate Michigan's usury restrictions. For the type of loan here, Michigan law permits the parties to agree in writing to any rate of interest. Consequently, Plaintiffs are incorrect in their assertion that the agreement is unenforceable under Michigan law. For related reasons, Tennessee law governs the enforceability of the parties' agreement. The parties' chose that law in their contract. Under Michigan's choice-of-law rules, the Court honors that choice.

In their response to CCB's motion, Plaintiffs assert reasons why the Court should reach a different outcome. In particular, they argue that the business entity exemption in Mich. Comp.

4

Laws § 438.61(3) limited the interest rate CCB could charge because Plaintiffs are business entities. That exemption caps the interest rate for loans to business entities from nonregulated lenders at the rate "not exceeding the rate allowed under [Michigan's criminal usury statute, Mich. Comp. Laws § 438.41(1)]." Mich. Comp. Laws § 438.61(3). The criminal usury statute allows a rate no higher than 25% (unless otherwise "authorized or permitted by law"). Mich. Comp. Laws § 438.41(1).

Plaintiffs made similar arguments in their motion for summary judgment. The Court rejected them. As the Court explained, another Michigan law permits Plaintiffs and CCB to agree in writing to "any rate of interest." *See* Mich. Comp. Laws § 438.31c(11). That provision applies to "a note, bond, or other indebtedness of $100,000.00 or more, the bona fide primary security for which is a lien against real property other than a single family residence." *Id.* Plaintiffs do not dispute that their loan from CCB meets these requirements. And for reasons the Court previously discussed, the Court is not persuaded that the business entity exemption prohibits lenders from charging a business entity an interest rate above 25% where the loan satisfies § 438.31c(11).

Plaintiffs rely on *Soaring Pine Capital Real Estate & Debt Fund II, LLC v. Park Street Group Realty Services, LLC*, 999 N.W.2d 8 (Mich. 2023), in which the Michigan Supreme Court observed that, "for certain types of loans, the criminal usury rate of 25% is the only applicable usury rate." *Id.* at 19 n.16 (citing Mich. Comp. Laws §§ 438.61(3), 450.4212). That general statement does not provide any guidance for this case, however, because it does not specify the types of loans to which the rule applies. Indeed, that court did not make any observations about how the business entity exemption in § 438.61 interacts with § 438.31c(11). To the contrary, the court expressly declined to address the plaintiff's argument that its loan was covered by § 438.31c(11). *Soaring Pine*, 999 N.W.2d at 23 n.24. Thus, *Soaring Pine* is inapposite.

5

Similarly, none of the other cases cited by Plaintiffs discuss this issue. *See Ross v. Peyerk*, No. 357597, 2022 WL 1714582 (Mich. Ct. App. May 26, 2022); *Mendola v. TMI Se., Inc.*, No. 240632, 2003 WL 22138278 (Mich. Ct. App. Sept. 16, 2003); *Dugan v. Vicko*, 307 F. Supp. 3d 684 (E.D. Mich. 2018). Thus, they are not persuasive. Accordingly, CCB is entitled to judgment on Plaintiffs' claim that the loan agreement is unenforceable under Michigan law.

**B. Foreclosure**

Plaintiffs also contend that CCB did not comply with Michigan law when it commenced non-judicial foreclosure proceedings because CCB does not own the underlying debt or security. Mich. Comp. Laws § 750.3204 permits a party to foreclose on a mortgage if that party is "either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage." Mich. Comp. Laws § 750.3204(1)(d).

Plaintiffs contend that CCB assigned its ownership interest in the mortgage to Cogent. Under a "loan participation agreement" dated July 28, 2022, between CCB and Cogent, CCB assigned its "ownership rights in and to the indebtedness, promissory notes or notes, collateral security and all documents . . . relating to" its loan to 138 River. (Loan Participation Agreement ¶ 1, ECF No. 74-2.) Plaintiffs apparently contend that CCB does not qualify as a party who can foreclose under Mich. Comp. Laws § 750.3204.

On its face, however, § 750.3204 also permits the owner "*of an interest* in the indebtedness secured by the mortgage" to initiate foreclosure. Mich. Comp. Laws § 750.3204(1)(d) (emphasis added). According to the Michigan Supreme Court, the owner of such an interest includes "mortgagees of record." *Residential Funding Co. v. Saurman*, 805 N.W.2d 909, 910 (Mich. 2011). CCB has provided evidence from the register of deeds that it was the mortgagee of record at the

6

time of foreclosure.  (*See* Commercial Mortgages, ECF Nos. 60-4, 60-5.)  Plaintiffs offer no evidence to show otherwise.[2]  Thus, CCB is entitled to summary judgment on this claim.

### III. MOTION TO AMEND COMPLAINT

Plaintiffs ask for leave to amend their complaint to add a claim under Tennessee law. Plaintiffs may amend their complaint "with leave of the court."  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id.*  "The decision as to whether justice requires the amendment is committed to the district court's sound discretion."  *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986).

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue or allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182-83 (1962).

**A. Futility of Amendment**

CCB argues that the Court should deny leave because the proposed amendment would be futile.  "An amendment is futile when, after including the proposed changes, the complaint still 'could not withstand a Rule 12(b)(6) motion to dismiss.'"  *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022) (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)).

To survive a Rule 12(b)(6) motion, a plaintiff's complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While "[t]he plausibility standard . . . is not akin to a probability

---

[2] In addition, § 750.3204 permits the servicing agent to foreclose.  Mich. Comp. Laws § 750.3204(1)(d).  Here, the loan participation agreement required CCB to "act as the disclosed agent of [Cogent] in connection with the collection of payments and the servicing of the Loan."  (Loan Participation Agreement ¶ 3.)  Plaintiffs themselves allege that CCB is a servicing agent.  (Compl. ¶ 41.)  CCB could initiate the foreclosure in its role as a servicing agent.

7

requirement . . . it asks for more than a sheer possibility" that the alleged misconduct occurred. *Id*. "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When considering a motion under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017). The Court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, or "formulaic recitations of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

As part of its assessment, the Court can consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

### B. Count I: Michigan Usury Law

The proposed amended complaint contains two counts instead of one. Like the current complaint, Count I of the proposed amended complaint asserts that the loan agreement is unenforceable under Michigan law because it allows CCB to charge a rate of interest that is higher than what Michigan usury law allows. Unlike the current complaint, the new Count I does not contain allegations about the validity of the foreclosure process. This proposed count fails to state a claim for the reasons discussed above and in the Court's previous opinion. In short, Tennessee law governs the enforceability of the loan agreement, not Michigan law. Also, the agreement does not violate Michigan's usury law.

The Court recognizes that "the test for futility" looks at whether the amended complaint could withstand a Rule 12(b)(6) motion to dismiss rather than a motion for summary judgment.

*Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000). That test is satisfied here. Resolving Plaintiffs' newly proposed Count I does not require the Court to rely on evidence that is beyond the scope of what the Court can consider on a Rule 12(b)(6) motion. The only such evidence are the copies of the mortgages recorded in 2023. That evidence is relevant to Plaintiffs' assertion in the complaint that CCB lacked authority to initiate foreclosure proceedings, but that evidence is irrelevant to Count I of the proposed amended complaint, which does not contain such an assertion. Accordingly, the Court will not allow Count I of the proposed amended complaint to proceed because it would not survive a motion to dismiss.

### C. Count II: Tennessee Law

Count II of the proposed amended complaint asserts that the rates charged by CCB violate Tennessee law.

#### 1. Tennessee BIDCO Act

Plaintiffs claim that CCB lacked authority to issue the loan under the Tennessee BIDCO Act. As the Court has explained,

> CCB is not subject to many of Tennessee's interest rate restrictions because it is a special entity formed under Tennessee's BIDCO Act, which authorizes CCB to charge rates as high as 30%, i.e., the "maximum rate that may be charged or received by any other lender in Tennessee." Tenn. Code § 45-8-210(b)(6)(A); *see* Tenn. Code § 45-2-1904(a) (permitting a registered bank to charge interest at up to 30% per year).

(5/30/2024 Op. 12.)

Plaintiffs argue that the BIDCO Act does not apply to a loan from a BIDCO entity to a borrower located outside Tennessee. "The stated purpose of the BIDCO Act is to make financial assistance more readily available to businesses 'in the state" and to promote economic development 'in the state.'" (*Id.* (citing Tenn. Code § 45-8-202).) However, nothing in the act limits its application to in-state loans. Similarly, nothing in the act prohibits BIDCOs from

9

transacting with businesses outside Tennessee. *See* Tenn. Code § 45-8-210 (listing the powers of a BIDCO). Thus, the act applies here.

### 2. Formula Rate

Plaintiffs claim that the maximum rate of interest that CCB could charge was the "formula rate" published by the Tennessee Financial Commissioner, which was 8.75% in 2022 and 12.25% in 2023. (Proposed Am. Compl. ¶ 65.) They provide no support for this legal assertion, however, and it conflicts with the BIDCO Act. The formula rate is not the maximum rate that may be charged by any other lender in Tennessee.

### 3. Loan Charges

Plaintiffs contend that CCB charged them "unfair and unreasonable" loan charges that were not part of a contract between the parties. (Proposed Am. Compl. ¶¶ 72, 76.)

> For any written contract, signed by the party to be charged, and not subject to subsection (a), the collection of loan charges shall be limited to those loan charges agreed to in that contract; provided, that no such charges may validly be agreed to in such a contract other than those which are *fair and reasonable compensation* for some expense incurred or to be incurred, or some service rendered or to be rendered, to or on behalf of the borrower, in connection with a particular loan.

Tenn. Code § 47-14-113(d) (emphasis added).

For instance, CCB allegedly charged $154,315 when closing on the original loan in July 2022. That amount allegedly includes a "loan origination fee" and a "referral fee to LevelUp Capital." (Proposed Am. Compl. ¶ 74.) CCB allegedly did the same when closing on the loan renewal in July 2023, charging a $110,000 "loan origination fee" and a $2,500 "underwriting fee." (*Id.* ¶ 75.) Plaintiffs contend these charges were unfair and unreasonable. CCB does not address these particular assertions in its response brief.

Instead, CCB argues that Plaintiffs lack standing to pursue their claim under Tennessee law because that claim contends that CCB engaged in *ultra vires* actions. Generally, only certain

10

parties have standing under Tennessee law to challenge the ability of a corporation to act outside its corporate authority. *See* Tenn. Code § 48-13-104 (identifying specific individuals who can challenge a corporation's power to act). However, the Court construes the proposed complaint as asserting a different sort of claim. Plaintiffs are not simply asserting that CCB acted outside its corporate authority; instead, they are asserting that CCB violated Tennessee law regarding usury and loan charges. Tennessee law expressly provides a remedy for usury and for excess loan charges. *See* Tenn. Code §§ 47-14-114, 47-14-115(b); *Hathaway v. First Fam. Fin. Servs., Inc.*, 1 S.W.3d 634, 642 (Tenn. 1999) ("[I]t is possible to recover loan charges that are in excess of those permitted by the Loan and Thrift Act.").

To be sure, Plaintiffs contend in their motion to amend that CCB "engaged in *ultra vires* acts under the Tennessee BIDCO Act and charged usurious interest and unreasonable and excessive loan charges" (Pls.' Mot. to Amend 3, ECF No. 63); however, the Court must look to the substance of Plaintiffs' claims rather than the label Plaintiffs give to them. Here, it appears that Plaintiffs are asserting at least some claims that are not premised on *ultra vires* conduct. CCB does not discuss such claims in its opposition to Plaintiffs' motion.

In short, the Court is not persuaded that adding the claim in Count II of the proposed amended complaint would be futile. Some parts of that claim may be meritless, but at this stage, the Court is not persuaded that the entire claim is meritless. Also, the Court is not persuaded that it should deny leave to amend to add this claim. Accordingly, the Court will grant leave to amend to add Count II of the proposed amended complaint.

## IV. CONCLUSION

For the reasons herein, the Court will grant CCB's motion for summary judgment. The Court will grant Plaintiffs' motion to amend the complaint, in part. The Court will allow Count II of the proposed amended complaint to proceed, but not Count I. Instead of requiring Plaintiffs to

11

file a new version of the amended complaint without Count I, the Court will accept the proposed version as the amended complaint and dismiss Count I because it is substantially the same as the claim in the original complaint for which CCB is entitled to summary judgment.

An order will enter consistent with this Opinion.


Dated: November 25, 2024                          /s/ Hala Y. Jarbou
                                                  HALA Y. JARBOU
                                                  CHIEF UNITED STATES DISTRICT JUDGE