UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

EQUINE LUXURY PROPERTIES, LLC, et al.,

    Plaintiffs,

v.

COMMERCIAL CAPITAL BIDCO, INC.,

    Defendants.

Case No. 1:23-cv-01142
Hon. Hala Y. Jarbou
Magistrate Judge Sally J Berens

---

**FIRST AMENDED
VERIFIED COMPLAINT
FOR
EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF**

---

    Plaintiffs, Equine Luxury Properties, LLC and 138 River Street, LLC, by and through their counsel, Taft, Stettinius & Hollister, LLP, bring this action for emergency injunctive and declaratory relief against Commercial Credit BIDCO, Inc., alleging:

**The Parties, Jurisdiction, and Venue**

    1.    Equine Luxury Properties, LLC ("<u>Equine</u>") is a Michigan limited liability company with its principal place of business in Antrim County, Michigan.

    2.    Equine is the title holder of record of real estate situated in the Township of Acme, County of Grand Traverse, State of Michigan, described as:

> The Northeast ¼ of the Northeast ¼ and the East 28 acres of the Southeast ¼ of the Northeast ¼ of Section 36, Town 28 North, Range 10 West.
>
> Commonly known as: V/L Brackett Road, Williamsburg, MI 49690
>
> Parcel ID No.: 28-01-236-001-00

1

(hereinafter referred to as the "Brackett Road").

3. 138 River Street, LLC ("138 River") is a Michigan limited liability company with its principal place of business in Antrim County, Michigan.

4. 138 River is the title holder of record of the real estate situated in the Village of Elk Rapids, County of Antrim, State of Michigan, described as:

> 24.4 feet of the entire West side of Lot 5 and 5/6 feet of the entire East side of Lot 4, H.H. Noble's Addition to the Village of Elk Rapids, Michigan, according to the plat thereof as recorded in Antrim County Records.
>
> Commonly known as: 138 River Street, Elk Rapids, MI 49629
>
> Parcel ID No.: 05-43-250-008-00

(hereinafter referred to as the "River Street").

5. Commercial Capital BIDCO, Inc. ("CCB"), is a Tennessee corporation with its principal place of business in Franklin, Tennessee. CCB has conducted business in connection with this dispute in Grand Traverse and Antrim counties in the state of Michigan.

6. This action arises out of a criminally usurious commercial loan made by CCB to Equine and 138 River, secured by mortgages on the Brackett Road and the River Street (collectively, "Mortgaged Premises"). CCB is attempting to foreclose by advertisement on the Mortgaged Premises in Grand Traverse and Antrim counties, where the Mortgaged Premises are situated, pursuant to Michigan's foreclosure by advertisement statute, being MCL § 600.3201, *et seq.*, and a power of sale clause in the mortgages.

7. This Court has exclusive jurisdiction over the subject-matter of this action and CCB's attempts to foreclose by advertisement on the Mortgaged Premises, pursuant to, *inter alia*, MCL §§ 600.751 and 600.3101.

134608581v1

8. This Court has personal jurisdiction over the parties, pursuant to, *inter alia*, MCL §§ 600.711, 600.715, 600.731.

9. Venue is proper in this Judicial Circuit pursuant to, *inter alia*, MCL §§ 600.1605 and 600.1621.

10. The amount in controversy exceeds $25,000, exclusive of interest and costs.

## Summary of the Action

11. By this action, the plaintiffs are seeking: (a) a declaration that a commercial loan from CCB to the plaintiffs - including the indebtedness, promissory mortgages, security agreements, and personal guaranty, is illegal and unenforceable under Michigan's wrongful-conduct rule because it violates Michigan's criminal usury act and related statutes; and (b) a temporary restraining order and an injunction enjoining CCB and its attorneys, from taking any action to enforce or collect indebtedness or to foreclose on CBB's mortgages until this Court can determine whether the loan is void and unenforceable as criminally usurious and what amount of money, if any, is due under the loan after application of the civil and criminal penalties in Michigan's usury statutes.

12. Under Michigan law, the maximum interest rate a commercial lender, like CBB, may permissibly charge a Michigan business entity is 25%. Under the parties' current 6-month loan extension agreement, CCB charged the plaintiff more than 26% in interest and fees, and after the plaintiff protested, CCB declared a default and instituted the "default rate," causing the interest rate to balloon to more than 32%.

13. Under Michigan's "wrongful-conduct rule," a commercial loan which violates Michigan's criminal usury act is unenforceable - and the lender is barred from recovering principal, interest, or any other fees related thereto and from enforcing its mortgage lien. If the plaintiffs

3

134608581v1

prevail on their usury defense, then the indebtedness would be eliminated, thereby vitiating CCB's mortgages and its right to enforce or collect the "debt."

14. In the alternative, if Tennessee law governs the original and the amended and restated promissory notes at issue, then the loan is still unenforceable. CCB exceeded its authority under the Tennessee BIDCO Act in making a loan to out of state borrowers on terms reserved for businesses which are in or plan on locating to the state of Tennessee and the interest and loan charges are usurious under Tennessee's usury laws.

15. Through its attorneys, CCB was publishing and posting notice of foreclosure as provided in Michigan's foreclosure by advertisement statute. Trott Law scheduled a foreclosure by a sale of the mortgaged premises at a public auction sale. The foreclosure and public auction sale of the River Street was scheduled for October 13, 2023, at 11:00 A.M.; and the foreclosure and public auction sale of the Brackett Road was scheduled for October 18, 2023, at 10:00 A.M.

16. Every piece of real estate is unique and, if CCB were permitted to proceed with the sheriff's sale before this Court renders a decision, the plaintiffs would be irreparably injured. CCB is not entitled to enforce or foreclose upon a criminally usurious loan. Without an injunction, CCB would have the benefit of foreclosing on its mortgage liens, even though it is not entitled to that benefit. Since CCB does not have the right to enforce an illegal debt or to foreclose on invalid liens under Michigan or Tennessee law, the statutory right of redemption after the public auction sale is not an adequate remedy at law. In contrast, CCB would suffer no immediate or irreparable harm if an injunction were issued because its mortgage liens would remain in place while the stay is in effect.

**General Allegations**

17. In June of 2002, Level Up Capital, a Michigan loan broker, solicited the plaintiffs' owner about a business loan. It proposed a loan from CCB.

18. The plaintiffs applied for a commercial loan from CCB though Level Up Capital.

19. On July 20, 2022, Terry Luker, CEO of CCB, flew to Michigan and, on the next day, he met with the plaintiffs' owner in Traverse City, Michigan. Mr. Luker physically inspected the Mortgaged Premises and went over the final details of the loan terms with the plaintiffs' owner.

20. On July 28, 2022, CCB agreed to make a 1-year term loan, in the amount of $1,834,000, to the plaintiffs, secured by mortgages on the Mortgaged Premises in northern Michigan. CCB charged the plaintiffs 18% interest, including fees.

21. CCB collected certain loan charges at closing, including a $110,040 loan origination fee and a referral fee from CCB to Level Up Capital for $27,500, all of which were charged against the loan proceeds. [Ex. 1.]

22. The loan transaction closed on July 28, 2022, through University Title Agency, a Michigan title company. [Ex. 1.] CCB funded the loan in Michigan, and University Title Agency disbursed the loan proceeds to the plaintiffs in Michigan via wire transfer to the plaintiffs' Michigan business account. [Ex. 2.]

23. The plaintiffs signed and delivered a Secured Promissory Note to CCB in Antrim County, Michigan. [Ex. 3.] The plaintiffs also signed and delivered a Commercial Mortgage on each of the Mortgaged Premises to CCB in northern Michigan. [Exs. 4 and 5.] The mortgages were executed before a notary public in Antrim County, Michigan. [*Id.*]

24. The plaintiffs' owner also signed and delivered a Personal Guaranty to CCB in Antrim County, Michigan. [Ex. 6.]

134608581v1

25. Each month, beginning September 1, 2022, through July 1, 2023, inclusive, the plaintiffs made timely interest only payments of $18,340 each, totaling $201,740.

26. On May 24, 2023, CCB sent a Notice of Maturity to the plaintiffs. The notice reminded the plaintiffs that the original loan was scheduled to mature on July 28, 2023, but CCB offered the plaintiffs the option to extend the loan for an additional 6-months through January 28, 2024, subject to revised and additional terms in the form of a non-binding Letter of Interest [Ex. 7.] The Letter of Intent included a disclaimer, stating '**This Letter of Interest is for discussion purposes only and is subject to change. It does not represent a final commitment to lend and does not constitute a final approval for financing. Additional covenants may be addressed in preliminary underwriting**". *Id*.,(emphasis in original)

27. On August 1, 2023, the plaintiffs signed and returned an Amended and Restated Promissory Note to CCB in Antrim County, Michigan. [Ex. 8.] The Amended and Restated Promissory Note extended the maturity date of the loan from July 28, 2023, through January 28, 2024. It also stated that it is "a complete restatement and replacement of that certain Promissory Note dated July 28, 2022" between CCB and the plaintiffs.

28. Under the Loan Closing Statement, CCB charged the plaintiffs at closing more than 26% interest, including a 6% origination fee in the amount of $110,040, as well as underwriting and processing fees. [Ex. 9.]

29. In Michigan, it is unlawful for commercial lenders to charge Michigan business entities more money as interest than at a rate "exceeding 25% at simple interest per annum *or the equivalent rate for a longer or shorter period*." MCL § 438.41; see also MCL § 450.4212 and MCL § 438.61(3). "Per annum" means 12 calendar months, or 365-days. Black's Law Dictionary (11th Ed. 2019). Thus, if the loan term is less than 12-months, the "equivalent rate" must be

determined by converting the interest and fees into a "per annum" rate in relation to a 12-month term.

30. Further, all lenders, except for a select class of state or national chartered banks, insurance carriers, and lenders approved to make residential mortgage loans under the national housing act, must include all fees and loan charges to borrowers as part of the interest collected or agreed to be paid on the loan. MCL § 438.31a. Thus, the origination, underwriting, and processing fees CCB charged to the plaintiffs must be treated as interest under Michigan's usury laws. *Id; see also, Soaring Pine, supra,* at pp. 6 and 22.

31. CCB charged interest at the stated rate of 14%. CCB also charged the plaintiffs a 6% origination fee, which also must be treated and included as "interest," as stated above. However, because the Amended Note has a 6-month loan term, the 6% origination fee must be converted into an equivalent annual rate for purposes of the interest rate limitations in Michigan's criminal usury statute. To convert the origination fee into the equivalent rate "per annum," the loan term would need to be doubled from 6-months to 12-months, thereby doubling the interest rate percentage from 6% to 12%. Thus, the 6% origination fee based on a 6-month period is considered a 12% interest per annum charge under the usury laws. A 12% origination fee, coupled with the stated interest rate of 14%, plus the processing and underwriting fees, results in an equivalent annual interest rate of more than 26%.

32. The plaintiffs objected to the usurious interest. In response, CCB then declared a default and instituted "default interest," which is 20%, thereby raising the interest rate even further, from more than 26% to greater than 32%.

33. On August 18, 2023, Trott Law, on behalf of CCB, sent notice of default, acceleration, and demand for payment. [Ex. 10.]

134608581v1

34. On August 23, 2023, CCB sent a Payoff Statement to 138 River, demanding payment in full of all amounts due under the Amended and Restated Promissory Note, including default interest and the origination, processing, and underwriting fees. [Ex. 11.]

35. On August 29, 2023, plaintiff's legal counsel sent a letter to Trott Law, disputing that the plaintiffs were in default because the loan was usurious, even under Tennessee law. [Ex. 12.]

39. On September 6, 2023, CCB's local counsel in Tennessee sent a letter to plaintiff's counsel. [Ex. 13.]  In that letter, CCB asserted that as a BIDCO licensed under the Tennessee BIDCO Act, (a) it is authorized to make business and industrial development loans under Tennessee law to out-of-state businesses and can charge interest at a rate up to 30% per annum in addition to origination fees and other loan charges, (b) attempted to recharacterize the "loan origination fees" as "commitment fees," under the Tennessee usury act; and (c) it is exempt from the proscriptions of Michigan's civil and criminal usury statutes.

36. On September 11, 2023, Trott Law sent "copies of the publication notices which had been submitted pursuant to MCL 600.3208" to foreclose by advertisement. [Ex. 14.]

37. On September 14, 2023, the plaintiffs' counsel responded to CCB's efforts to foreclose by advertisement and its claim that as a BIDCO, it is not restricted to making business and industrial development loans to growth-oriented small and medium size businesses in Tennessee for the purpose of promoting economic development and job growth in Tennessee. [Ex. 15.] The plaintiffs thus demanded that CCB immediately cease and desist from all efforts to collect the debt or to foreclose by advertisement under Michigan or Tennessee law.

134608581v1

## COUNT I

## DECLARATORY JUDGMENT

## MICHIGAN USURY ACT

<u>Actual Controversy</u>

38. This Court has jurisdiction to declare the rights and legal relations between the parties under Michigan's usury statutes and to issue injunctive relief pursuant to MCR 2.605, MCR 3.310, and MCL § 438.431c(10). There is an actual controversy between the parties within the jurisdiction of this Court. The plaintiffs are entitled to a declaration whether CCB has violated Michigan's usury laws, whether the wrongful-conduct rule bars CCB from recovering any part of the indebtedness, including principal dent or interest, and from foreclosing on its mortgages, and the exact amount due, if anything, under the loan after the civil usury penalties are applied, and whether CCB has otherwise met the statutory preconditions for foreclosure by advertisement.

<u>Sale and Transfer of Loan and Mortgage</u>

39. On information and belief, CCB sold and transferred all its rights, title, and interests in and to the indebtedness, the promissory notes, the mortgages, and all other loan documents to Cogent Bank, pursuant to a Loan Participation Agreement, dated July 28, 2022, and is the servicing agent for Cogent Bank. [Ex. 15.]

40. Cogent Bank is not identified in the notice of foreclosure by advertisement as the foreclosing assignee nor does a record chain of title exist evidencing the assignment of the mortgages to Cogent Bank in violation of MCL §§ 600.3204(3) and 600.3212(a). Thus, the scheduled foreclosure does not meet the statutory preconditions to foreclose a mortgage by advertisement. The mortgages provide that any judicial or nonjudicial foreclosure proceeding will be conducted in accordance with Michigan law.

134608581v1

### No Occurrence of Default in a Condition of the Mortgage

41. There must be the occurrence of a default in a condition of the mortgage by which the power of sale becomes operative before a party has the statutory right to foreclose a mortgage by advertisement. MCL § 600.3204(1)(a).

42. The plaintiffs are not required to perform under an illegal contract or to make criminally usurious loan payments. See, *e.g*., *Wellman v. Bank One, N.A.*, 2005 WL 2291741 at *3 (Sept. 20, 2005); *Scalici v. Bank One, N.A*., 2005 WL 2291732 at *6 (Sept. 20, 2005). Therefore, a default in a condition of the mortgage has not occurred, much less the occurrence of a default by which the power of sale became operative.

### Usury Defense

43. Usury is an absolute defense to CCB's efforts to foreclose a mortgage by advertisement.

44. Michigan requires that both in-state and out-of-state lenders must comply with Michigan's usury statutes when making loans to Michigan citizens and business entities. The onus is on the lender to charge a lawful interest rate and, if he fails to do so, the usury laws provide the borrower with a remedy. The usury laws are intended to punish illegal loan practices and to deter predatory lending.

45. Under Michigan's criminal usury act, it is illegal for a lender to knowingly charge or collect more money as interest at a rate higher than 25% per annum. MCL §438.41. A lender who violates the criminal usury act is guilty of a felony, punishable by imprisonment for a term of up to 5-years and/or a fine not to exceed $10,000. *Id*.

134608581v1

46. MCL § 438.61(3) makes it unlawful for a lender, like CCB, to charge a Michigan business entity an interest rate greater than the "rate allowed" under Michigan's criminal usury act. MCL § 450.4212 also provides that Michigan LLCs cannot agree to an interest rate above the criminal usury rate.

47. Under Michigan's wrongful-conduct rule, a plaintiff's claim will be barred if it is based, in whole or in part, on the plaintiff's own illegal conduct. *Orzel v. Scott Drug Co,* 449 Mich. 550, 558 (1995). This rule has been applied to bar lenders from enforcing loan agreements which provide for an illegal rate of interest. See, *e.g.*, *Wellman v. Bank One, N.A.*, 2005 WL 2291741 at *3 (Sept. 20, 2005); *Scalici v. Bank One, N.A.*, 2005 WL 2291732 at *6 (Sept. 20, 2005). An illegal loan is rendered unenforceable, and the lender is precluded from recovering the principal debt. *Id*. The elimination of the indebtedness vitiates the mortgage and all other liens and security interests.

48. A lender who makes a commercial loan to a business entity at an interest rate greater than 25% also constitutes a violation of Michigan's civil usury statute. MCL § 438.61(3). The civil usury act imposes strict liability. Intent is not an element of a civil violation.

49. A lender who enters into a non-compliant agreement or charges excessive interest is "barred from the recovery of any interest, any official fees, delinquency or collection charge, attorney fees or court costs," and requires that all interest and fees previously paid by the borrower shall be applied against the outstanding balance of the principal debt. MCL § 438.32. In addition, the borrower is entitled to recover his attorney fees and costs from the lender. MCL § 438.32.

50. Michigan does not differentiate between consumer and commercial loans. Consumers and businesses are entitled to equal protection under Michigan's usury laws, and unlike other states, Michigan presumes that even in the context of sophisticated business borrowers, there

134608581v1

is such an inequality in the relationship between the lender and borrower that the borrower's necessities deprived him of the freedom to contract and placed him at the mercy of the lender.

Choice-of-Law and Forum-Selection Clauses Violate Michigan Public Policy

51. Under Michigan's substantive law and conflict of laws rules, Michigan courts will not enforce choice-of-law and forum-selection clauses that violate Michigan public policy and where this state has a materially greater interest than the chosen state in the outcome of a dispute.

52. The Michigan Supreme Court recently ruled in *Soaring Pine Capital Real Estate and Debt Fund II, LLC v. Park St. Grp. Realty Servs.*, 511 Mich. 89; 999 N.W.2d 8 (2023), that Michigan courts have a duty to refuse to enforce a contract that is contrary to Michigan's usury laws. While the general rule is that a parties' contractual agreement should be enforced as written, this rule does not apply if a provision would violate Michigan's public policy to protect Michigan citizens and businesses from lenders who charge excessive or illegal interest.

53. Michigan has a materially greater interest than Tennessee in the outcome of this dispute.

54. The loan was solicited in Michigan; the loan was made and funded in Michigan; the plaintiffs and the personal guarantor are Michigan citizens; the mortgaged premises are located in northern Michigan; the loan documents were executed and performed in Michigan; and CCB has elected to avail itself of the privileges and benefits of Michigan's laws by initiating foreclosure of a mortgage by advertisement in Grand Traverse and Antrim counties, pursuant to Michigan's foreclosure by advertisement statute.

55. The Tennessee BIDCO Act is inapplicable to, and does not govern, this loan transaction. Even if it did, the Tennessee General Assembly "declared that the purpose" of the Tennessee BIDCO Act is to promote economic development and job growth *in the state of*

*Tennessee* through the formation of BIDCOs "to help meet the financing assistance and management assistance needs of growth-oriented small and medium size businesses *in the state [of Tennessee]*." Tenn, Code Ann. 45-8-202(b)(1),(emphasis added). [Ex. 18]

55. CCB's loan to the plaintiffs does not involve growth-oriented small or medium sized-businesses *in the state of Tennessee* nor does a commercial loan to Michigan limited liability companies, secured by mortgages on properties in northern Michigan, promote economic development or job growth *in the state of Tennessee*.

## TRO and Injunction

56. The Michigan usury statutes provide that "[a] party to a transaction subject to this act shall be entitled to have his or her rights under this act enforced or protected by injunctive order of a court." MCL § 438.31c(10). Michigan courts have not hesitated to issue TROs and injunctions enjoining a mortgagee from foreclosing on a mortgage by advertisement when the borrowers has asserted usury as a defense.

57. There is a substantial likelihood that the plaintiff will succeed on the merits.

58. The plaintiffs face immediate and irreparable injury if an injunction is not issued. The right of redemption is not an adequate remedy at law because the plaintiffs dispute the validity of the mortgage and the amount of the indebtedness.

59. On balance, the harm to the plaintiffs in the absence of an injunction is greater than any potential harm to CCB if an injunction is issued. If CCB is allowed to foreclose on the mortgages by advertisement, it will result in immediate and irreparable harm to the plaintiffs under circumstances where CCB is not entitled to enforce the mortgage, because the indebtedness has been either eliminated altogether or significantly reduced by application of the civil usury penalties. In contrast, CCB faces no harm because its mortgage liens will remain in place while

the injunction is in effect or if either or both properties is sold, the net sale proceeds will be deposited with the clerk of the court in an interest-bearing account and the mortgage discharged, pending the outcome of this dispute.

60. The public interest is served by the issuance of an injunction. Michigan's usury laws are deeply rooted in the public policy of this state. The usury statutes expressly provide for the issuance of injunctions to protect consumers and business entities alike from actual and potential violations of the usury statutes.

WHEREFORE, Equine Luxury Properties, LLC and 138 River Street, LLC respectfully request that this Court:

A. issue a temporary restraining order and an injunction enjoining the defendants and their directors, officers, shareholders, employees, agents, representatives, attorneys, successors and assigns from filing, commencing, initiation, prosecuting, pursuing, or continuing any action, lawsuit, proceeding, foreclosure, or process arising under, in connection with, or incident to the loan, the loan documents (including, but not limited to, the original or amended and restated promissory notes, the commercial mortgages, the security agreements, and personal guaranty), the indebtedness, plaintiffs, or the mortgaged premises, until further Order of this Court;

B. adjudge and declare that (i) Michigan law governs the loan transaction; (ii) the choice-of-law and forum-selection clauses in the original and amended and restated promissory notes are unenforceable; (iii) the loan, the loan documents, and the indebtedness are unenforceable under Michigan's wrongful-conduct rule because the loan violates Michigan's criminal usury act; (iv) impose the mandatory penalties under Michigan's civil usury act; and

C. Such other relief as the Court deems just and proper under the circumstances.

134608581v1

## COUNT II

## TENNESSEE USURY ACT

61. In the alternative, if Tennessee law governs the original and the amended and restated promissory notes at issue, then the interest and loan charges CCB charged to, and collected from, the plaintiffs are usurious under Tennessee's usury laws.

<u>Interest</u>

62. Under the Tennessee BIDCO act, a Tennessee BIDCO is authorized to provide financial assistance and management assistance to business firms. Tenn Code § 45-8-210.

63. The purpose of the Tennessee BIDCO Act is to promote job growth and economic development in the state of Tennessee by providing financial and management assistance to small and medium sized firms in the state of Tennessee or to out of state business firms which plan on locating to the state of Tennessee. Tenn. Code § 45-8-203.

64. CCB made a loan to the plaintiffs, out of state borrowers who had no intention of locating to the state of Tennessee. Thus, the loan was subject to the general usury restrictions limiting the rate of interest to the "formula rate" published weekly by the Tennessee Financial Commissioner. Tenn Code § 45-14-103.

65. Under the "formula rate," the maximum interest rate CCB could charge the plaintiffs when the initial loan was closed on July 28, 2022, was 8.75% per annum; and the maximum rate of interest it could charge when the extension/renewal was closed on July 28, 2023, was 12.25%.

66. The loan is facially usurious.

67. The stated non-default rate in the Secured Promissory Note, dated July 28, 2022, is 12% per annum.

68. The stated non-default rate in the Amended and Restated Promissory Note, dated July 28, 2023, is 14% per annum.

69. The interest is usurious and unenforceable. The plaintiffs are entitled to recover the excessive interest they paid to CCB.

Loan Charges

70. "Loan charges are compensation to the lender for services or expenses directly incident to a loan or contract to make a loan, and do not include compensation for other purposes, including, but not limited to, time-price differentials, interest, brokerage commissions, or commitment fees." Tenn. Code § 47-14-102(9).

71. Loan charges are limited to the valid loan charges in a written contract signed by the party to be charged. Tenn. Code § 47-14-113.

72. There is no written contract signed by the plaintiffs relating to the loan charges in connection with the loan. Thus, the loan charges are unenforceable and must be refunded or credited to the plaintiffs.

73. Separately, loan charges must be "fair and reasonable compensation for some expenses incurred or to be incurred, or some service rendered or to be rendered, to or on behalf of the borrower, in connection with a particular loan." Tenn. Code § 47-14-113.

74. CCB charged to, and collected from, the plaintiffs $154,315.32 in loan charges at closing on the original loan, dated July 28, 2022, including a $110,040 loan origination fee and a $27,510 referral fee to LevelUp Capital.

75. CCB charged $134,394 in loan charges to the plaintiffs at closing on the loan renewal, dated July 28, 2023, including a $110,040 loan origination fee and a $2,500 underwriting fee.

134608581v1

76. The loan charges are unfair and unreasonable because they were not reasonable compensation for expenses incurred, or to be incurred, by CCB on behalf of the plaintiffs in making or servicing the loan. Thus, the loan charges are unenforceable and must be refunded or credited to the plaintiffs.

77. CCB has repeatedly attempted to recharacterize the $220,080 in loan "origination fees" as "commitment fees."

78. "Commitment fees are compensation to the lender in return for its conditional or unconditional obligation during a certain period of time to make a loan under specified terms and conditions." Tenn. Code § 47-14-102(5).

79. CCB never made or issued a loan commitment to the plaintiffs and, accordingly, it cannot reclassify the origination fees as commitment fees to avoid the proscriptions of the Tennessee usury act.

### Unconscionability

80. CCB is guilty of unconscionable conduct by taking interest and loan charges in excess of limitations fixed by statute. Therefore, CCB is barred from collecting interest or loan charges, must refund all loan charges, and is liable for twice the amount of interest collected with respect to the transaction. Tenn. Code § 47-14-117.

Wherefore, Equine Luxury Properties, LLC and 138 River Street, LLC respectfully request that this Court:

A. adjudge and declare that (i) the stated interest rates in the original and amended and restated promissory notes are facially usurious under Tennessee law; (ii) there is no written contract signed by the plaintiffs in which the plaintiffs agreed to in such a contract; (iii) the loan charges are unfair and unreasonable compensation for some

expense incurred, or to be incurred, or some service rendered or to be rendered, to or on behalf of the plaintiffs in connection with the loan; and (iv) the loan origination fees are not commitment fees under the Tennessee usury act; (v) the interest and loan charges are unenforceable are unenforceable and must be refunded to the plaintiffs;

B. enter a judgment in favor of the plaintiffs and against Commercial Capital BIDCO Inc. for the amount of the loan charges and twice the amount of any interest collected with respect to the loan transaction; and

C. such other relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

/s/ *Mark L. Kowalsky*
Mark L. Kowalsky (P35573)
Scott Assenmacher (P81190)
Taft, Stettinius & Hollister, LLP
27777 Franklin Road, Suite 2500
Southfield, MI 48034-8222
T: (248) 351-3000
Attorneys for Plaintiffs

Dated: August 21, 2024

## **VERIFICATION**

I declare that the above states are true to the best of my information, knowledge, and belief.

| EQUINE LUXURY PROPERTIES, LLC | 138 RIVER STREET, LLC |
|---|---|
| By: /s/ *Dean J. Groulx* | By: /s/ *Dean J. Groulx* |
| Its: Member | Its: Member |

134608581v1