UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUINE LUXURY PROPERTIES, LLC, et al.,

    Plaintiffs,

v.

COMMERCIAL CAPITAL BIDCO, INC.,

    Defendant.
_____/

Case No. 1:23-cv-1142

Hon. Hala Y. Jarbou

## OPINION

Plaintiffs Equine Luxury Properties, LLC ("Equine") and 138 River Street, LLC ("138 River") brought this action in state court for declaratory and injunctive relief against Defendant Commercial Capital BIDCO, Inc. ("CCB") seeking to prevent CCB from foreclosing on two properties located in Michigan. CCB removed the action to this Court on the basis of diversity jurisdiction. Thereafter, CCB brought a third-party complaint against the United States of America, Flintfields Horse Park, LLC, Next Bridge Funding, LLC, University Title Agency, LLC, and Ascot Specialty Insurance Company. Before the Court is Plaintiffs' motion for appointment of a receiver and amendments and supplements thereto. (Mot. to Appoint Receiver, ECF No. 84; Am. Mot. to Appoint Receiver, ECF No. 90; Suppl. re Am. Mot. to Appoint Receiver, ECF No. 108.) According to the supplement (ECF No. 108), all parties with an interest in the Properties consent to the appointment except for Plaintiffs. For the reasons herein, the Court will deny CCB's motion.

### I. BACKGROUND

Plaintiffs own two properties in Michigan, one in Williamsburg, Michigan (the "Acme Township Property"), and one in Elk Rapids, Michigan (the "Elk Rapids Property") (collectively,

the "Properties"). The Acme Township Property is a vacant parcel of land. The Elk Rapids Property contains a multi-tenant building with retail space and residential units. (*See* Appraisal Rep. for Elk Rapids Property, ECF No. 93-2, PageID.1640.)

In July 2022, CCB made two loans to Plaintiffs for a total of about $1.8 million, using the Properties as collateral. (Verified Compl. ¶ 7, ECF No. 7; Borrower's Settlement Statement, ECF No. 7, PageID.210.) The parties' obligations were memorialized in a promissory note (Note, ECF No. 1, PageID.33) and two mortgage agreements (Mortgage Agreements, ECF No. 1, PageID.39-74).

Plaintiffs made interest-only payments on the loans from September 2022 to July 2023. (Verified Compl. ¶ 24.) In July 2023, Plaintiffs executed an Amended and Restated Note secured by the original mortgages on the Properties. (Am. & Restated Promissory Note, ECF No. 60-3.) The following month, Plaintiffs defaulted on their obligations by not making payments.

Plaintiffs brought this action in state court in October 2023 to stop CCB from enforcing Plaintiffs' obligations under the amended note and related mortgage agreements. Plaintiffs argued that the agreements were unenforceable under Michigan law because the rate of interest charged by CCB exceeded Michigan's criminal usury statute. After CCB removed the case to this Court, the Court dismissed Plaintiffs' claim under Michigan law but allowed Plaintiffs to amend their complaint to add a claim that the agreements and associated charges violated Tennessee usury law. (*See* 11/25/2024 Op. 9-12, ECF No. 78.)

CCB then filed counterclaims against Plaintiffs to enforce the loan agreements, to obtain judicial foreclosure of the mortgages, and to appoint a receiver over the Properties. (Corrected Am. Countercl., ECF No. 99.) CCB also filed a motion for appointment of a receiver. In its amended motion, CCB asks the Court to appoint a receiver with authority to take full possession

and control over the Properties, collect rent, prevent waste, monitor the business operations of Plaintiffs, operate the Properties, market the Properties, sell the Properties (subject to the Court's approval), repay CCB the debt it is owed, and distribute remaining proceeds to other creditors. (Proposed Order Appointing Receiver, ECF No. 91-6.)

## II. STANDARD

"A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court. The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006); *see also* Fed. R. Civ. P. 66. Relevant here, "the court may appoint a receiver of mortgaged property to protect and conserve it pending foreclosure." *Gordon v. Washington*, 295 U.S. 30, 37 (1935).

"A receivership is an 'extraordinary remedy' that a court should employ with the 'utmost caution' and grant 'only in cases of clear necessity to protect plaintiff's interests in the property.'" *Pension Ben. Guar. Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015) (quoting 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2983 (3d ed. 2014)). District courts have considered factors like the following when determining whether to appoint a receiver:

> (1) the adequacy of the security; (2) the financial position of the borrower; (3) any fraudulent conduct on the defendant's part; (4) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (5) inadequacy of legal remedies; (6) the probability that harm to the plaintiff by denial of appointment would outweigh injury to parties opposing appointment; (7) the plaintiff's probable success in the action and the possibility of irreparable injury to the plaintiff's interest in the property; and (8) whether the plaintiff's interests sought to be protected will in fact be well-served by a receivership.

*PNC Bank, N.A. v. Goyette Mech. Co.*, 15 F. Supp. 3d 754, 758 (E.D. Mich. 2014).

CCB relies in large part on state law to support its request, but "the weight of authority suggests that appointment of a receiver in a diversity action is controlled by federal law, not state law." *Fed. Nat'l Mortg. Ass'n v. Mapletree Invs. Ltd. P'ship*, No. 10-CV-10381, 2010 WL 1753112, at *2 (E.D. Mich. Apr. 30, 2010) (collecting cases); *see* Wright et al., *supra*, § 2983 ("Whether a federal court should appoint a receiver in a diversity action appears to be a question properly determined on the basis of federal law."). Accordingly, the Court will follow federal law.

### III. ANALYSIS

#### A. Appointment Factors

##### 1. Adequacy of Security

Plaintiffs offer evidence that the Properties were worth a little over $3 million as of July 2022. (*See* Appraisal Rep. for Acme Township Property, ECF No. 93-1, PageID.1633 (estimating value to be $1.25 million); Appraisal Report for Elk Rapids Property, PageID.1640 (estimating value to be $1.8 million).) Plaintiffs contend that the Properties are now worth almost $4 million because an entity offered to pay $2 million for the Acme Township Property in 2024.[1] (Buy Sell Agreement, ECF No. 19, PageID.516.) CCB has not offered any evidence to the contrary.

By contrast, as of December 2024, the amount due to CCB under the Note was about $2.4 million (Am. Countercl. ¶ 34, ECF No. 99), which is much less than the value of the Properties. This factor weighs in Plaintiffs' favor because there is adequate security for the debt.

##### 2. Financial Position of the Borrower

Apparently, Plaintiffs have not paid anything to CCB since August 2023 and stopped paying the property taxes and property insurance premiums for the Properties. These facts suggest

---

[1] Plaintiffs also contend that another party offered to pay $3 million for the Acme Township Property in March 2024; they provide no evidence of this offer, however, so the Court will disregard it.

Plaintiffs are not willing or financially capable of maintaining the Properties, which weighs in CCB's favor.

### 3. Fraudulent Conduct

The Court is not aware of any fraudulent conduct.

### 4. Imminent Danger of Loss

Although non-payment of taxes can lead to tax foreclosure, Plaintiffs assert that the earliest such foreclosure could occur is in March 2026. Plaintiffs do not explain the basis for this assertion, however. At any rate, the amount of taxes due is relatively small compared to the value of the Properties above the indebtedness, which makes it difficult to discern how a tax foreclosure could significantly impair CCB's interests. (*See* Am. Countercl. ¶¶ 36-37 (noting about $52,000 due on property taxes).)

CCB also notes that Plaintiffs have canceled their insurance policy on the Elk Rapids Property. (*See* Insurance Coverage Notification, ECF No. 99-11.) That cancellation raises the risk that a catastrophic event would significantly diminish the value of the Elk Rapids Property without any protection for Plaintiffs or CCB. While not necessarily imminent, it is a risk. *See Lehigh Valley 1 LLC v. Whitehall Fiduciary LLC*, No. CV 24-2627, 2025 WL 1285816, at *5 (E.D. Pa. May 2, 2025) (finding risk of loss justifying appointment of receiver where property owner refused to provide evidence that property taxes or property insurance premiums had been paid). This factor weighs in CCB's favor.

### 5. Balance of Harms

CCB faces a risk of loss to its security due to the unpaid taxes and the possibility of uninsured damage to the Elk Rapids Property. A receivership could prevent this possibility by collecting rents and paying for taxes and insurance. The harm to Plaintiffs from such minimal intervention would not be significant.

Furthermore, Plaintiffs previously agreed that CCB would have the right to appoint a receiver in the event that Plaintiffs defaulted by failing to pay taxes or insurance premiums. Both mortgages contain the following provision:

> Borrower's failure, refusal, or neglect to pay any taxes or assessments levied against the Property or any insurance premiums due on policies of insurance covering the Property will constitute waste under MCL 600.2927, and Lender shall have a right to the appointment of a receiver of the Property and of the rents and income from the Property, with whatever powers the court making the appointment confers. Borrower irrevocably consents to the appointment in that event and agrees that Lender's costs and expenses, including reasonable attorney fees, incurred in the proceeding shall be added to the Obligations secured by the Mortgage. Payment by Lender for and on behalf of Borrower of any delinquent taxes, assessments, or insurance premiums payable by Borrower under the terms of this Mortgage will not cure the default or in any manner impair Lender's right to the appointment of a receiver.

(*See, e.g.*, Mortgage for Elk Rapids Property § 18, ECF No. 99-4.) This factor weighs in CCB's favor. *See PNC Bank*, 15 F. Supp. 3d at 758 ("[T]he parties' advance consent to the appointment of a receiver is a strong factor weighing in favor of appointing one.").

### 6. CCB's Likelihood of Success and Possibility of Irreparable Harm

There is no dispute that Plaintiffs have not paid what they owe under the loan agreements and that they have not paid property taxes or insurance premiums as required by those agreements. These breaches trigger CCB's contractual rights to a receivership and to foreclosure on the Properties, rights that CCB seeks to enforce through its counterclaims against Plaintiffs and through the motion herein.

Plaintiffs attempted to invalidate the loan agreements, but the Court held that Plaintiffs cannot rely on Michigan usury law to do so. The Court also held that Tennessee law authorized CCB to loan money to Plaintiffs even though Plaintiffs are not located in Tennessee. What remains is for the Court to adjudicate CCB's counterclaims and Plaintiffs' remaining claims under Tennessee law. The latter are primarily focused on Plaintiffs' assertion that CCB charged

unreasonable fees. (*See* 11/25/2024 Op. 9-10, ECF No. 78.) At this stage, it does not appear that those claims would extinguish CCB's mortgages on the Properties or prevent CCB from asserting its rights under the loan agreements. At best, Plaintiffs' claims could reduce the total amount that Plaintiffs owe CCB. Accordingly, CCB is likely to succeed on its counterclaims, though the precise amount it is owed remains uncertain.

As to the possibility of irreparable harm, Plaintiffs have put the Properties at risk by not insuring them. And their non-payment of the debt, the property taxes, and the insurance premiums suggest they do not have the means to compensate CCB should harm to the Properties reduce the Properties' value below the amount of indebtedness. Thus, there is a *possibility* of irreparable harm without adequate insurance on the Properties.

### 7. Adequacy of Other Remedies

Plaintiffs argue that less drastic remedies are available to CCB. The mortgage agreements give CCB the right to make "advances" to pay the taxes and maintain property insurance and then add those payments to Plaintiffs' indebtedness. (*See* Mortgage for Elk Ridge Property § 11.) Consequently, to the extent CCB is concerned about the possibility of a tax foreclosure and uninsured loss, CCB can address those concerns on its own without court intervention. And because the value of the Properties far exceeds Plaintiffs' current debt to CCB, CCB will not suffer irreparable harm because a sale of those Properties would be sufficient to compensate CCB for Plaintiffs' current debt as well as future expenses incurred by CCB to cover its advances for unpaid taxes and insurance premiums.

### B. Balancing of Factors

Although many factors weigh in CCB's favor, the balance of factors does not. In particular, it appears the value of the Properties is more than adequate to protect CCB's ability to recover what it is owed. Also, there is no immediate threat of loss or harm to CCB's interests. To the

extent CCB is concerned about the failure to pay property taxes and the lack of insurance on the Properties, the mortgages indicate that CCB can address these issues without court intervention. And because the value of the Properties far exceeds Plaintiffs' current debt, CCB will likely be able to recover any future expenses that may be necessary for it to take such protective measures. Thus, on balance, equity does not favor a receiver.

## IV. CONCLUSION

On the present record, this case does not present a clear need for a receiver to protect CCB's interests.  Accordingly, the Court will deny CCB's motion to appoint a receiver.  This decision renders Plaintiffs' objections to CCB's nominated receiver (ECF No. 94) moot.

The Court will enter an order in accordance with this Opinion.


Dated: May 15, 2025         /s/ Hala Y. Jarbou
                            HALA Y. JARBOU
                            CHIEF UNITED STATES DISTRICT JUDGE